IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** BALTIMORE FIELD OFFICE 31 HOPKINS PLAZA, SUITE 1432 BALTIMORE, MD 21201<br><br>**Plaintiff,**<br><br>v.<br><br>**SHEETZ, INC.,** 5700 SIXTH AVE. ALTOONA, PA 16602<br><br>**SHEETZ DISTRIBUTION SERVICES, LLC,** 242 SHEETZ WAY CLAYSBURG, PA 16625<br><br>and<br><br>**CLI TRANSPORT, LP,** 5700 SIXTH AVE. ALTOONA, PA 16602<br><br>**Defendants.** | **CIVIL ACTION NO.**<br><br>**COMPLAINT** |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), to correct unlawful employment practices because of race and to provide appropriate relief to the American public and a class of aggrieved Black, American Indian/Alaska Native, and multiracial job applicants who were adversely affected by such practices. As alleged with greater particularity below, the U.S. Equal Employment Opportunity Commission ("EEOC" or "the Commission") alleges that since at least August 10, 2015, and continuing to the present, Defendants Sheetz, Inc.;

Sheetz Distribution Services, LLC; and CLI Transport, LP (collectively, "Defendants") have subjected a class of aggrieved Black, American Indian/Alaska Native, and multiracial job applicants to an ongoing, companywide employment practice of refusing to hire such persons because of information about their criminal justice histories, including but not limited to convictions, that resulted in those applicants being denied employment opportunities because of race in violation of Title VII.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this civil action under 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

2.      The alleged unlawful employment practices were and are being committed in the State of Maryland, within the jurisdiction of this judicial district, and other jurisdictions.

## PARTIES

3.      Plaintiff U.S. Equal Employment Opportunity Commission is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII and is expressly authorized to bring this action under Section 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4.      At all relevant times, Defendant Sheetz, Inc., a Pennsylvania corporation, has continuously been doing business in the State of Maryland (Allegany County, Carroll County, Cecil County, Frederick County, Harford County, Washington County, and other counties), as well as other states, and has continuously employed at least 15 employees.

5.      At all relevant times, Defendant Sheetz Distribution Services, LLC, a Pennsylvania limited liability company, has continuously been doing business in the State of Maryland

(Allegany County, Carroll County, Cecil County, Frederick County, Harford County, Washington County, and other counties), as well as other states, and has continuously employed at least 15 employees.

6. At all relevant times, Defendant CLI Transport, LP, a Pennsylvania limited partnership, has continuously been doing business in the State of Maryland (Allegany County, Carroll County, Cecil County, Frederick County, Harford County, Washington County, and other counties), as well as other states, and has continuously employed at least 15 employees.

7. At all relevant times, Defendant Sheetz, Inc., has continuously been an employer engaged in an industry affecting commerce within the meaning of Section 701(b), (g), and (h) of Title VII, 42 U.S.C. § 2000e(b), (g), and (h).

8. At all relevant times, Defendant Sheetz Distribution Services, LLC, has continuously been an employer engaged in an industry affecting commerce within the meaning of Section 701(b), (g), and (h) of Title VII, 42 U.S.C. § 2000e(b), (g), and (h).

9. At all relevant times, Defendant CLI Transport, LP, has continuously been an employer engaged in an industry affecting commerce within the meaning of Section 701(b), (g), and (h) of Title VII, 42 U.S.C. § 2000e(b), (g), and (h).

10. Defendants constitute a single "employer" within the meaning of Section 701(b), (g), and (h) of Title VII, 42 U.S.C. § 2000e(b), (g), and (h). In support of this averment, the Commission states the following:

    a. Defendant Sheetz Distribution Services, LLC, is and has at all relevant times been a subsidiary of Defendant Sheetz, Inc., its parent company.

    b. Defendant CLI Transport, LP, is and has at all relevant times been a subsidiary of Defendant Sheetz, Inc., its parent company.

  c.  Defendant Sheetz, Inc., created Defendant Sheetz Distribution Services, LLC's policies and practices concerning Title VII.

  d.  Defendant Sheetz, Inc., created Defendant CLI Transport, LP's policies and practices concerning Title VII.

  e.  Defendant Sheetz, Inc., created Defendant Sheetz Distribution Services, LLC's policies and practices concerning use of criminal justice history information as a particular employment practice to make hiring decisions for all positions companywide.

  f.  Defendant Sheetz, Inc., created Defendant CLI Transport, LP's policies and practices concerning use of criminal justice history information as a particular employment practice to make hiring decisions for all positions companywide.

  g.  Employees of Defendant Sheetz, Inc., participate and have at all relevant times participated in Defendant Sheetz Distribution Services, LLC's implementation of its policies and practices concerning use of criminal justice history information as a particular employment practice to make hiring decisions for all positions companywide.

  h.  Employees of Defendant Sheetz, Inc., participate and have at all relevant times participated in Defendant CLI Transport, LP's implementation of its policies and practices concerning use of criminal justice history information as a particular employment practice to make hiring decisions for all positions companywide.

  i.  At all relevant times, Defendants have had interrelated business operations.

  j.  At all relevant times, Defendants have had common management.

  k.  At all relevant times, Defendants have had common ownership.

  l.  At all relevant times, Defendants have been financially intertwined.

11.     Collectively, Defendants operate at least 700 Sheetz-brand store locations in Maryland, North Carolina, Ohio, Pennsylvania, Virginia, and West Virginia, as well as distribution and other facilities, and employ more than 20,000 persons.

## ADMINISTRATIVE PROCESS

12.     More than 30 days prior to the institution of this lawsuit, a job applicant filed a charge of discrimination with the Commission, EEOC Charge No. 530-2016-02176, alleging that Defendant Sheetz Distribution Services, LLC, had violated Title VII.

13.     More than 30 days prior to the institution of this lawsuit, another job applicant filed a charge of discrimination with the Commission, EEOC Charge No. 533-2018-01081, alleging that Defendants had violated Title VII.

14.     On May 18, 2022, the Commission issued to Defendants Sheetz, Inc., and Sheetz Distribution Services, LLC, an administrative Determination arising from the Commission's investigation of EEOC Charge No. 530-2016-02176 in which the Commission found reasonable cause to believe that Defendants Sheetz, Inc., and Sheetz Distribution Services, LLC, have violated and continue to violate Title VII and inviting them to join with the Commission in informal methods of conciliation to endeavor to eliminate their discriminatory employment practices and provide appropriate relief. The Commission's findings in the Determination included, but were not limited to, the following:

    a.     Defendants Sheetz, Inc., and Sheetz Distribution Services, LLC, committed an ongoing practice in violation of Title VII with respect to a class of Black, American Indian/Alaska Native, and multiracial (i.e., persons identified as "two or more races") job applicants by denying them hire because of race through Defendant Sheetz, Inc.'s and Defendant Sheetz Distribution Services, LLC's use of criminal justice history information as

a particular employment practice that has caused a disparate impact against a class of Black, American Indian/Alaska Native, and multiracial job applicants, regarding all positions companywide; and

      b.      Defendants Sheetz, Inc., and Sheetz Distribution Services, LLC, committed a continuing, companywide practice in violation of Title VII with respect to a class of Black, American Indian/Alaska Native, and multiracial job applicants who did not pass Defendant Sheetz, Inc.'s and Defendant Sheetz Distribution Services, LLC's criminal justice history screening by failing to hire them for all positions because of race.

15.      On May 18, 2022, the Commission issued to Defendants Sheetz, Inc., Sheetz Distribution Services, LLC, and CLI Transport, LP, an administrative Determination arising from the Commission's investigation of EEOC Charge No. 533-2018-01081 in which the Commission found reasonable cause to believe that Defendants Sheetz, Inc., Sheetz Distribution Services, LLC, and CLI Transport, LP, have violated and continue to violate Title VII and inviting them to join with the Commission in informal methods of conciliation to endeavor to eliminate their discriminatory employment practices and provide appropriate relief. The Commission's findings in the Determination included, but were not limited to, the following:

      a.      Defendants Sheetz, Inc., Sheetz Distribution Services, LLC, and CLI Transport, LP, committed an ongoing practice in violation of Title VII with respect to a class of Black, American Indian/Alaska Native, and multiracial (i.e., persons identified as "two or more races") job applicants by denying them hire because of race through Defendants Sheetz, Inc.'s, Sheetz Distribution Services, LLC's, and CLI Transport, LP's use of criminal justice history information as a particular employment practice that has caused a

disparate impact against a class of Black, American Indian/Alaska Native, and multiracial job applicants, regarding all positions companywide; and

      b.    Defendants Sheetz, Inc., Sheetz Distribution Services, LLC, and CLI Transport, LP, committed a continuing, companywide practice in violation of Title VII with respect to a class of Black, American Indian/Alaska Native, and multiracial job applicants who did not pass Defendants Sheetz, Inc.'s, Sheetz Distribution Services, LLC's, and CLI Transport, LP's criminal justice history screening by failing to hire them for all positions because of race.

16.    The Commission engaged in communications with Defendants to provide Defendants an opportunity to remedy the discriminatory practices described in the administrative Determinations by identifying the remedies required by the Commission for conciliation.

17.    The Commission was unable to secure from Defendants a conciliation agreement acceptable to the Commission.

18.    On June 20, 2023, the Commission issued to Defendants a Notice of Failure of Conciliation.

19.    All conditions precedent to the institution of this lawsuit have been fulfilled.

### STATEMENT OF CLAIMS

20.    Since at least August 10, 2015, and continuing to the present, Defendants have engaged in unlawful employment practices at their Maryland facilities and business operations and all other facilities and business operations company-wide through their particular employment practice of using criminal justice history information as a basis for declining to hire job applicants for all positions in violation of Section 703(a)(1), (a)(2), and (k) of Title VII, 42 U.S.C. § 2000e-2(a)(1), (a)(2), and (k).

21. Since at least August 10, 2015, and continuing to the present, Defendants have implemented a practice requiring that job applicants seeking to be hired for all job titles must pass Defendants' review of information about their criminal justice history, including but not limited to convictions.

22. Defendants obtain information about job applicants' criminal justice history through questions on Defendants' job application forms and a background check that is conducted at Defendants' behest by one or more third-party vendors after Defendants make a conditional offer of employment to job applicants. The vendors supply Defendants with consumer reports that include criminal justice history information about job applicants who are subject to the background checks.

23. Based on job applicants' criminal justice history, including but not limited to convictions, Defendants make a decision whether job applicants are deemed to have passed or failed the review.

24. Defendants refuse to hire all job applicants who they deem to have failed their criminal justice history screening.

25. At all relevant times, Defendants' personnel who decide whether job applicants pass or fail the criminal justice history screening have not been, and are not, required by Defendants to contact the job applicants to request additional information not reflected in the consumer reports before deeming them to have failed the criminal justice history screening.

26. At all relevant times, Defendants have not and do not require, as a matter of uniform or standard practice, that decisions to deny employment to job applicants due to criminal justice history be subject to review by a managerial official or other company official beyond the personnel assigned to conduct the initial screening.

27. At all relevant times, Defendants have not and do not require, as a matter of uniform or standard practice, that decisions to deny employment to job applicants due to criminal justice history, including identification of the specific conviction or other information that is the basis for the decision, be communicated to job applicants.

28. At all relevant times, Defendants have not and do not maintain, as a matter of uniform or standard practice, a procedure for job applicants to appeal or otherwise seek reconsideration of decisions to deny them employment due to criminal justice history information, including a procedure to invite job applicants to provide Defendants with any additional information that either Defendants or the applicants deem relevant to Defendants' decision to deny employment before Defendants make final decisions to disqualify the applicants.

29. Defendants' background check vendors maintain records related to Defendants' criminal justice history screening.

## Count I: Denial of Hiring Because of Race – Black

30. The Commission incorporates by reference the factual allegations set forth in Paragraphs 20–29, above.

31. Since at least August 10, 2015, and continuing to the present, Defendants have subjected a class of presently identified and unidentified aggrieved Black job applicants to a continuing, companywide denial of hiring because of race (Black) in violation of Title VII.

32. Defendants' criminal justice history screening causes significant disparate impact against Black job applicants because of race, as reflected in the results of their screening practice. Black job applicants comprise a disproportionately high number of the total number of job applicants whom Defendants have refused to hire because of criminal justice history information.

33. For instance, Black job applicants have failed Defendants' criminal justice history screening, and consequently are denied employment, at a rate exceeding approximately 14.5% while White job applicants have failed Defendants' criminal justice history screening, and consequently are denied employment, at a rate of under approximately 8%.

34. Defendants' aforementioned criminal justice history screening outcomes are consistent with published criminal justice system statistics, which indicate that Black persons throughout the United States, including the jurisdictions in which Defendants hire and employ workers, are subject to arrest, conviction, and incarceration at significantly higher rates relative to White persons.

**Count II: Denial of Hiring Because of Race – American Indian/Alaska Native**

35. The Commission incorporates by reference the factual allegations set forth in Paragraphs 20–29, above.

36. Since at least August 10, 2015, and continuing to the present, Defendants have subjected a class of presently identified and unidentified aggrieved American Indian/Alaska Native job applicants to a continuing, companywide denial of hiring because of race (American Indian/Alaska Native) in violation of Title VII.

37. Defendants' criminal justice history screening causes significant disparate impact against American Indian/Alaska Native job applicants because of race, as reflected in the results of their screening practice. American Indian/Alaska Native job applicants comprise a disproportionately high number of the total number of job applicants whom Defendants have refused to hire because of criminal justice history information.

38. For instance, American Indian/Alaska Native job applicants fail Defendants' criminal justice history screening, and consequently are denied employment, at a rate exceeding

approximately 13% while White job applicants fail Defendants' criminal justice history screening, and consequently are denied employment, at a rate of under approximately 8%.

39. Defendants' aforementioned criminal justice history screening outcomes are consistent with published criminal justice system statistics, which indicate that American Indian/Alaska Native persons throughout the United States, including the jurisdictions in which Defendants hire and employ workers, are subject to arrest, conviction, and incarceration at significantly higher rates relative to White persons.

**Count III: Denial of Hiring Because of Race – Multiracial**

40. The Commission incorporates by reference the factual allegations set forth in Paragraphs 20–29, above.

41. Since at least August 10, 2015, and continuing to the present, Defendants have subjected a class of presently identified and unidentified aggrieved multiracial (e.g., persons self-identified as "two or more races") job applicants to a continuing, companywide denial of hiring because of race (multiracial) in violation of Title VII.

42. Defendants' criminal justice history screening causes significant disparate impact against multiracial job applicants because of race, as reflected in the results of their screening practice. Multiracial job applicants comprise a disproportionately high number of the total number of job applicants whom Defendants have refused to hire because of criminal justice history information.

43. For instance, multiracial job applicants fail Defendants' criminal justice history screening, and consequently are denied employment, at a rate exceeding approximately 13.5% while White job applicants fail Defendants' criminal justice history screening, and consequently are denied employment, at a rate of under approximately 8%.

**Additional Averments**

44. The effect of the unlawful employment practices complained of in Paragraphs 20–43, above, has been to deprive a class of Black, American Indian/Alaska Native, and multiracial job applicants of equal employment opportunities and otherwise adversely affect their status as applicants because of their race.

45. The unlawful employment practices complained of in Paragraphs 20–43, above, are part of a continuing course of race discrimination that Defendants have committed against Black, American Indian/Alaska Native, and multiracial job applicants since at least August 10, 2015, and continuing to the present.

46. The unlawful employment practices complained of in Paragraphs 20–43, above, were and are intentional.

**PRAYER FOR RELIEF**

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining and restraining Defendants, their officers, successors, assigns, and all persons in active concert or participation with them from engaging in race discrimination, including discriminatory denial of hire; use of particular employment practices for employment selection purposes that cause unlawful disparate impact against Black, American Indian/Alaska Native, and/or multiracial job applicants, including but not limited to Defendants' current methods of criminal justice history screening; and any other employment practice that discriminates on the basis of race.

B. Order Defendants to institute and carry out policies, practices, and programs that provide equal employment opportunities for Black, American Indian/Alaska Native, and

multiracial job applicants, and that eradicate the effects of their past and present unlawful employment practices.

C. Order Defendants to make whole a class of aggrieved Black job applicants by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of their unlawful employment practices, including but not limited to instatement with retroactive seniority and benefits or front pay in lieu thereof and an additional amount to offset adverse tax consequences of payment of a lump-sum monetary award in a single tax year that represents earnings that would have accrued over multiple tax years but for Defendants' unlawful employment practices.

D. Order Defendants to make whole a class of aggrieved American Indian/Alaska Native job applicants by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of their unlawful employment practices, including but not limited to instatement with retroactive seniority and benefits or front pay in lieu thereof and an additional amount to offset adverse tax consequences of payment of a lump-sum monetary award in a single tax year that represents earnings that would have accrued over multiple tax years but for Defendants' unlawful employment practices.

E. Order Defendants to make whole a class of aggrieved multiracial job applicants by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of their unlawful employment practices, including but not limited to instatement with retroactive seniority and benefits or front pay in lieu thereof and an additional amount to offset adverse tax consequences of payment of a lump-sum monetary award in a single tax year that represents earnings that would have accrued over multiple tax years but for Defendants' unlawful employment practices.

F. Grant such further relief as the Court deems necessary and proper in the public interest.

G. Award the Commission its costs of this action.

Respectfully submitted,

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

KARLA GILBRIDE
GENERAL COUNSEL
WASHINGTON, D.C.

CHRISTOPHER LAGE
DEPUTY GENERAL COUNSEL
WASHINGTON, D.C.

*Debra M. Lawrence* by RLP per written authorization
DEBRA M. LAWRENCE
REGIONAL ATTORNEY
D. Md. Bar No. 04312
EEOC – Baltimore Field Office
George H. Fallon Federal Building
31 Hopkins Plaza, Suite 1432
Baltimore, MD 21201
(410) 801-6691
(410) 962-4270 (facsimile)
Email: debra.lawrence@eeoc.gov

RONALD L. PHILLIPS
ASSISTANT REGIONAL ATTORNEY
OH Bar No. 0070263
EEOC – Baltimore Field Office
George H. Fallon Federal Building
31 Hopkins Plaza, Suite 1432
Baltimore, MD 21201
Phone: (410) 801-6714
Fax: (410) 962-4270
Email: ronald.phillips@eeoc.gov

*[signature]*
GREGORY A. MURRAY
SENIOR TRIAL ATTORNEY
PA Bar No. 316144
EEOC – Pittsburgh Area Office
William S. Moorhead Federal Building
1000 Liberty Avenue, Suite 1112
Pittsburgh, PA 15222
Phone: (412) 588-6907
Fax: (412) 395-5749
Email: gregory.murray@eeoc.gov

15