**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION**

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>SHEETZ, INC., SHEETZ DISTRIBUTION SERVICES, LLC, and CLI TRANSPORT, LP,<br><br>Defendants. | Case No. 1:24-cv-01123-JRR<br>Judge Julie R. Rubin |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO
TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**

## I.     INTRODUCTION

The U.S. Equal Employment Opportunity Commission ("EEOC" or "Commission") has filed a complaint, alleging that Defendants Sheetz, Inc. ("Sheetz"), Sheetz Distribution Services, LLC ("SDS") and CLI Transport, L.P. ("CLI") (collectively, "Defendants" or the "Companies") have at all their facilities discriminated based on race, violating Title VII of the Civil Rights Act of 1964 ("Title VII"), as to a class of Black, American Indian/Alaska Native, and multiracial job applicants by refusing to hire them because of information in their criminal justice histories.

For the convenience of the witnesses and the parties, and in the interest of justice, Defendants move to transfer this action to the U.S. District Court for the Western District of Pennsylvania pursuant to 28 U.S.C. § 1404(a). The District of Maryland is not the appropriate place to litigate this case, as Defendants' corporate headquarters, relevant decisionmakers, and much of the evidence, such as relevant documents, are located in the Western District of Pennsylvania. Most of the Defendants' administrative and operational decisions, including review

of applicant criminal history information, were and are made in the Western District of Pennsylvania. Most of the witnesses likely integral to this case are in the Western District of Pennsylvania. The two EEOC charges referenced in the Complaint were filed with and investigated by the EEOC's Pittsburgh Area Office. The inconvenience of litigating this matter in the District of Maryland is apparent for both Defendants and the Commission because the individuals who know the relevant facts are in the Western District of Pennsylvania, not the District of Maryland.

Because venue is proper in the Western District of Pennsylvania and the allegations in this case are only tenuously connected to the District of Maryland, and because the Commission's selection of forum should not be given much weight, and the convenience of both witnesses and parties favor the Western District of Pennsylvania, as does the interest of justice, this Court should grant Defendants' motion for transfer to the Western District of Pennsylvania.[1]

## II. RELEVANT FACTUAL BACKGROUND

Sheetz's corporate headquarters is in Altoona, Pennsylvania. (Declaration of Chris Fasick ("Fasick Decl.") at ¶ 11, attached at Exhibit A). Sheetz is incorporated in Pennsylvania. (*Id.* at ¶ 9). Sheetz has over 700 locations across six states — Pennsylvania, Ohio, Maryland, Virginia, West Virginia, and North Carolina — and more than 24,000 employees. (*Id.* at ¶ 26). Sheetz maintains its Operations Support Center ("OSC") in Claysburg, Pennsylvania. (*Id.* at ¶¶ 10, 13). Both the Altoona and Claysburg locations are in Blair County, Pennsylvania. (*Id.* at ¶¶ 10-11, 13).

---

[1] Defendants waive no arguments or objections to the Complaint by filing this motion, which does not operate as a responsive pleading. *See, e.g., Lake v. Fellner*, No. 2:12-cv-01345-GMN-GWF, 2014 U.S. Dist. LEXIS 21123, at *1-2 (D. Nev. Feb. 19, 2014) ("A motion for change of venue, however, is not a responsive pleading, and unlike a motion to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3), such a motion does not alter the time period by which a party must file their responsive pleading."); *see also* 28 U.S.C. § 1404; Fed. R. Civ. P. 12(b)(3).

As of May 1, 2024, Sheetz had only 34 stores in Maryland, but had 306 stores in Pennsylvania. (*Id*. at ¶¶ 27-28). Of the six states where Sheetz currently operates, Maryland has the fewest number of stores and Pennsylvania has the most stores. (*Id*.).

SDS is the production and distribution operation for Sheetz. (Fasick Decl. at ¶ 4). SDS is incorporated in Pennsylvania (*Id*. at ¶ 9). Its headquarters is in Claysburg, Pennsylvania at the Claysburg Distribution Center. (*Id*. at ¶ 14). SDS operates distribution centers in Claysburg, Pennsylvania and Burlington, North Carolina, which produce, package, store, and transport many of the staple food products that Sheetz sells in its convenience stores, including "made-to-go" sandwiches, wraps, salads, parfaits, and bakery products. (*Id*. at ¶¶ 14-16). The SDS accounting and finance departments and other back-office support operate out of the Claysburg Distribution Center. (*Id*. at ¶ 17).

CLI, the dedicated petroleum carrier for Sheetz stores, has its headquarters in Altoona, Pennsylvania. (Declaration of Jeff Eisaman ("Eisaman Decl.") at ¶¶ 5, 8, attached at Exhibit B). CLI is incorporated in Pennsylvania (*Id*. at ¶ 9). CLI runs approximately 240 tankers, drives over 24 million miles annually, and delivers more than 2.4 billion gallons of petroleum products to Sheetz convenience stores. (*Id*. at ¶ 10). CLI operates 13 main terminals and a number of satellite terminals in the six states where Sheetz currently has stores. (*Id*. at ¶ 11). Five of CLI's main terminals are located in Pennsylvania, in Altoona, Carlisle, Ephrata, Pittsburgh, and Scranton. (*Id*. at ¶ 12). CLI also operates three satellite terminals in Pennsylvania: Dubois, Latrobe, and Selinesgrove. (*Id*. at ¶ 13).

The only CLI facility in Maryland is a small satellite terminal in Walkersville, Maryland. (Eisaman Decl. at ¶¶ 14, 17). The Walkersville, Maryland satellite terminal is operationally connected to a main terminal in Manassas, Virginia. (*Id*. at ¶ 15). CLI has over 650 employees,

and only 14 of them work at the Walkersville, Maryland satellite terminal. (*Id*. at ¶ 16). CLI does not operate any other facilities in Maryland. (*Id*. at ¶ 17). CLI does not maintain any back office support or administrative support out of Maryland. (*Id*. at ¶ 18).

All of the Companies' policies and procedures, including those pertaining to criminal history reviews, are developed, revised, and administered by employees working out of the Companies' locations in Blair County, Pennsylvania. (Fasick Decl. at ¶¶ 8, 20; Eisaman Decl. at ¶¶ 20-21). Specifically, the employees responsible for developing, revising, and administering the policies regarding hiring and procedures regarding criminal history reviews for Sheetz and SDS applicants work out of Sheetz's Operations Support Center in Claysburg, Pennsylvania. (Fasick Decl. at ¶ 20). Until approximately May 2024, the employees responsible for developing, revising, and administering the policies regarding hiring and procedures regarding criminal history reviews for CLI applicants worked out of the Altoona, Pennsylvania terminal. (Eisaman Decl. at ¶ 20). Now, the employees responsible for developing, revising, and administering the policies regarding hiring and procedures regarding criminal history reviews for CLI applicants work out of Sheetz's Operations Support Center in Claysburg, Pennsylvania. (*Id*. at 21). Further, because the back-office operations for Sheetz, SDS, and CLI are mainly in Blair County, Pennsylvania, many of the documents and materials related to hiring and criminal history reviews are kept at the Companies' facilities there. (Fasick Decl. at ¶ 24; Eisaman Decl. at ¶ 22).

As to Defendants' ties with the State of Maryland, the Commission alleges in its Complaint only that unlawful employment practices have been committed in Maryland (and the other states where the Companies operate) and that Defendants have "continuously been doing business in the State of Maryland" in the relevant time period. (Dkt. No. 1 at ¶¶ 2, 4-6, 20). The Complaint simply notes that Defendants operate "at least 700 Sheetz-branded locations in Maryland, North Carolina,

Ohio, Pennsylvania, Virginia, and West Virginia, as well as distribution and other facilities. . . ." (Dkt. No. 1 at ¶ 11). The Complaint omits any reference to the fact that the charges underlying this suit were filed with and investigated by the Commission's Pittsburgh Area Office, or that less than 5% of Sheetz stores and only one satellite CLI terminal are located in Maryland. (Fasick Decl. at ¶ 29; Eisaman Decl. at ¶¶ 14-17; *see* Dkt. No. 1 at ¶¶ 12-15).

### III.  LEGAL STANDARD

"For the convenience of parties and witnesses, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). In ruling on a motion to transfer under § 1404(a), "a court must first determine whether venue is proper in the proposed transferee court and whether the defendants are subject to personal jurisdiction in the transferee forum." *Vasconcellos v. Cybex Int'l, Inc.*, 962 F. Supp. 701, 706 (D. Md. 1997) (citation omitted). If venue is proper in the proposed alternative forum, courts in this District generally consider four factors to determine whether transfer is appropriate: "(1) the weight accorded to the plaintiff's choice of venue, (2) witness convenience and access, (3) convenience of the parties, and (4) the interest of justice." *D2L Ltd. v. Blackboard, Inc.*, 671 F. Supp. 2d 768, 777 (D. Md. 2009) (citing *TECH USA v. Evans*, 592 F. Supp. 2d 852, 857 (D. Md. 2009)); *see also WW, LLC v. Coffee Beanery, Ltd.*, Civ. WMN-05-3360, 2011 WL 5110267, at *6 (D. Md. Oct. 26, 2011) (same). In evaluating these factors, district courts have "discretion to decide whether to transfer the case, taking into account considerations of convenience and fairness." *Vasconcellos*, 962 F. Supp. at 705 (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).

Applied here, these considerations weigh strongly in favor of transferring this action to the Western District of Pennsylvania.

## IV. ARGUMENT

### A. Venue is Proper in the Western District of Pennsylvania

As an initial matter, there can be no question that the Western District of Pennsylvania is a proper venue for this action and all Defendants are subject to personal jurisdiction there.

In cases arising under Title VII, venue is proper: (1) "in any judicial district in the State in which the unlawful employment practice is alleged to have been committed," (2) "in the judicial district in which the employment records relevant to such practice are maintained and administered," or (3) "in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice." 42 U.S.C. § 2000e-5(f)(3). Moreover, Title VII provides that "the judicial district in which the respondent has [its] principal office shall in all cases be considered a district in which the action might have been brought." *Id*. § 2000e-5(f)(3); *see also Ashe v. Giant of Md., LLC*, No. AW-06-1293, 2007 WL 7020451, at *1 n.1 (D. Md. July 17, 2007), *aff'd*, 321 F. App'x 316 (4th Cir. 2009) (setting out appropriate potential venue selections for claims brought under Title VII).

The Western District of Pennsylvania is a proper venue for this case because it satisfies all of the above factors. First, Sheetz, SDS, and CLI are all headquartered in Blair County, Pennsylvania and incorporated in the Commonwealth of Pennsylvania. (Fasick Decl. at ¶¶ 9-11, 14; Eisaman Decl. at ¶¶ 8-9). That Defendants' "principal offices" are in Blair County, Pennsylvania alone establishes proper venue in the Western District of Pennsylvania. *See* 28 U.S.C. § 118(c) (Western District of Pennsylvania encompasses Blair County); *Wiggs v. Sec'y of Army*, 902 F.2d 1567, 1990 WL 64668, at *1 (4th Cir. 1990) (affirming transfer to Eastern District of Virginia where Secretary of the Army's "'principal office' was located"). Second, the Complaint alleges that Defendants engaged in unlawful employment practices not just in Maryland

facilities but at "all other facilities and business operations company-wide[,]" (Dkt. No. 1, ¶ 20), so aggrieved individuals presumably would have worked in the Western District of Pennsylvania but for the alleged unlawful employment practices. Further, the two individuals whose charges are identified in the Complaint applied for jobs in the Western District of Pennsylvania. (*See* Dkt. No. 1, ¶¶ 10-11; Fasick Decl. at ¶¶ 30-31; *see* 28 U.S.C. § 118(c) (Western District of Pennsylvania encompasses Blair County and Fayette County)). Third, most of the Companies' records relevant to the allegations of the Complaint are "maintained and administered" at the Companies' Blair County, Pennsylvania facilities. (*See* Fasick Decl. at ¶¶ 19-20, 24; Eisaman Decl. at ¶¶ 20-22).

These facts confirm that venue is proper in the Western District of Pennsylvania, and because their headquarters are in Blair County, Pennsylvania, Defendants are subject to personal jurisdiction there.

B. **Transfer to the Western District of Pennsylvania is Appropriate Pursuant to 28 U.S.C. § 1404(a)**

Under § 1404(a), a district court may transfer any civil action to any other district court where it might have been brought "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). Courts must first determine whether venue is proper in the proposed alternative forum and whether the defendant is subject to personal jurisdiction in that forum. *EEOC v. FedEx Ground Package Sys., Inc.*, No. CIV.A. WMN-14-3081, 2015 WL 790500, at *1 (D. Md. Feb. 24, 2015) (citing *D2L Ltd. v. Blackboard, Inc.*, 671 F.Supp.2d 768, 778 (D.Md. 2009)). As set forth above, venue is proper in the Western District of Pennsylvania and all Defendants are subject to personal jurisdiction in that District.

After determining that venue in the proposed alternative forum is proper, the court must consider, "(1) the weight accorded to the plaintiff's choice of forum; (2) witness convenience and access; (3) convenience of the parties; and (4) the interests of justice." *FedEx Ground Package*

*Sys., Inc.*, 2015 WL 790500, at *1 (citing *Cross v. Fleet Reserve Ass'n Pension Plan*, 383 F.Supp.2d 852, 856 (D.Md. 2005)). The decision to transfer venue is left to the sound discretion of the trial court. *See Brock v. Entre Computer Ctrs., Inc.,* 933 F.2d 1253, 1257 (4th Cir. 1991).

### 1. *The Commission's Choice of Venue is Entitled to Minimal Deference*

The EEOC's choice of venue is entitled to little, if any, weight. First, as a federal agency with nationwide reach, the EEOC differs from most private parties in that it neither resides in nor is tied to a specific judicial district. Courts therefore routinely find that the Commission's choice of venue warrants less deference than might be appropriate in cases involving private litigants. *See, e.g.*, *FedEx Ground Package Sys., Inc.*, 2015 WL 790500, at *1 ("[The weight given to a plaintiff's choice of forum] is lessened, however, when the plaintiff is a government agency."); *EEOC v. United Airlines, Inc.*, No. CV 09-2469 PJH, 2009 WL 7323651, at *3 (N.D. Cal. Dec. 3, 2009) ("[B]ecause the EEOC is . . . a government agency . . . , the weight accorded to the EEOC's choice of forum is diminished."); *EEOC v. Texas Roadhouse, Inc.*, No. 1:11-cv-11732-DJC, 2012 WL 5894910, at *1 (D. Mass. Nov. 9, 2012) (holding deference due EEOC's venue choice "lessened" because it is federal agency); *EEOC v. Icon Ben. Adm'rs, Inc.*, No. EP-02-CA-527-DB, 2003 WL 748268, at *5 (W.D. Tex. Feb. 10, 2003) ("[T]he personal interest normally associated with a plaintiff's choice of forum do not weigh as heavily in [the EEOC's] favor . . . as they do when a plaintiff is a corporation or a natural person.").

Second, where the Commission purports to bring claims on behalf of a class of job applicants denied positions by Defendants on a corporate-wide basis, the dispersed nature of the claims further diminishes any deference due the Commission's choice of forum. *See, e.g.*, *Gomez v. Kroll Factual Data, Inc.*, No. 8:12-cv-2773-AW, 2013 WL 639042, at *2 (D. Md. Feb. 20, 2013) ("[B]ecause Plaintiff brings this action on behalf of a putative class of consumers presumably

scattered across the country, Plaintiff's choice of forum does not merit the usual deference."); *see also In re Warrick*, 70 F.3d 736, 741 & n.7 (2d Cir. 1995) ("It is true . . . that the plaintiff's choice of forum is a less significant consideration in a (here, putative) class action than in an individual action."); *Owner-Operator Indep. Drivers Ass'n v. N. Am. Van Lines, Inc.*, 382 F. Supp. 2d 821, 824 (W.D. Va. 2005) ("[L]ess deference is given to the plaintiff's choice of forum where that plaintiff represents a class.").

Third, the facts of this case further diminish any deference due the Commission's choice of forum. Deference is substantially reduced where the chosen forum is not the plaintiff's home or has little or no connection to the events giving rise to the litigation. *D2L Ltd.*, 671 F. Supp. 2d at 779; *see also Tse v. Apple Computer, Inc.*, No. L-05-2149, 2006 WL 2583608, at *2 (D. Md. Aug. 31, 2006). The EEOC is not at "home" in the District of Maryland because, as noted, it is a federal agency residing in no particular district. Further, Maryland has minimal connection to the facts underlying the Commission's claims. The Commission's Complaint generally alleges unlawful actions impacted in Maryland, but includes no allegation that any decision not to hire an individual in the class of affected job applicants was made in Maryland or that Defendants' policies regarding criminal history information for job applicants was developed or maintained in Maryland. The two charges referenced in the Complaint involved denial of jobs to applicants in Pennsylvania and the EEOC has identified no similar individuals in Maryland on whose behalf it seeks relief. (Fasick Decl. at ¶¶ 30-31). Most of the relevant witnesses, records and information are in Pennsylvania. (Fasick Decl. at ¶¶ 8, 19-20, 24; Eisaman Decl. at ¶¶ 20-22). Sheetz only has 34 stores and CLI has only one satellite terminal in Maryland. (Fasick Decl. at ¶ 28; Eisaman Decl. at ¶¶ 14, 17).

For these reasons, the EEOC's choice of Maryland as the forum for this action should be afforded little, if any, deference.

### 2. *The Convenience of the Witnesses Strongly Favors Transfer to the Western District of Pennsylvania*

The second factor under § 1404(a) looks to the convenience of the witnesses. "The convenience of the witnesses is 'perhaps the most important factor' in determining whether a transfer of venue should be granted." *Mamani v. Bustamante*, 547 F. Supp. 2d 465, 473 (D. Md. 2008) (quoting *Cronos Containers Ltd. v. Amazon Lines, Ltd.*, 121 F. Supp. 2d 461, 466 (D. Md. 2000)).

In *FedEx Ground*, the Commission filed a complaint in the District of Maryland alleging nationwide disability discrimination by FedEx Ground, despite the fact that FedEx Ground's headquarters and many of the relevant witnesses were located in Pittsburgh, Pennsylvania, within the Western District of Pennsylvania. *FedEx Ground Package Sys., Inc.*, 2015 WL 790500, at *1. Under a similar set of facts, the court determined that the convenience of the witnesses was the determinative factor. *Id*. at 3. In that case, the FedEx Ground employees responsible for developing and implementing the policies at issue were located in Pittsburgh, Pennsylvania, within the Western District of Pennsylvania, and despite the fact that the EEOC alleged that the relevant witnesses were actually the front line managers at the company's facilities across the country, the court found that the convenience of the centrally-located corporate witnesses who would testify regarding the company's official policy favored transfer to the Western District of Pennsylvania. *Id*.

Similarly, the key witnesses for Sheetz, SDS, and CLI work in Blair County, Pennsylvania. (Fasick Decl. at ¶¶ 8, 19-20; Eisaman Decl. at ¶¶ 20-21). The two individuals whose charges prompted the EEOC investigation preceding this suit applied for jobs in the Western District of Pennsylvania. (Fasick Decl. at ¶¶ 30-31). No witnesses have been identified who reside in Maryland, and the existence of only 34 Sheetz store locations and a single satellite CLI terminal

in Maryland do not suffice to make it more convenient for Defendants and Defendants' witnesses to participate in this case in the District of Maryland rather than the Western District of Pennsylvania. The opposite is true. Litigating this case in the District of Maryland would impose a burden on Defendants by requiring travel to Baltimore, which is three times farther away from Blair County than the Johnstown Division of the Western District of Pennsylvania.

The location of Defendants' witnesses is critical because this disparate impact case will likely hinge on the actions of the Companies and thus testimony from the Companies' witnesses, not any particular facts pertaining to or testimony from unidentified job applicants denied a position by any of the Companies in Maryland after a criminal history review. *See, e.g.*, *B&G Equip. Co. v. J.T. Eaton & Co.*, No. WMN-06-1363, 2006 WL 2813886, at *3 (D. Md. Sept. 27, 2006) ("In this district, motions to transfer have been regularly granted where the defendant has shown that most of its key witnesses are residents of another district.") (quoting *Cronos Containers*, 121 F. Supp. 2d at 465).

The distance for Defendants' witnesses to travel to Baltimore, Maryland, from Blair County, Pennsylvania, where Defendants' principal places of business are located, would be more than 160 miles, meaning just traveling to and from Maryland would take nearly a full workday. (Fasick Decl. at ¶ 22). While in Maryland, the witnesses would have to stay in hotels and wait to testify, while being unable to effectively complete other work or fulfill personal obligations. However, if this case were tried in the Western District of Pennsylvania, most of Defendants' corporate witnesses could be in the courtroom on a few hours' notice, given the proximity of the Johnstown federal courthouse to their place of employment. This would substantially reduce the disruption to the witnesses' work and personal lives. As the Fifth Circuit noted, "when the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than

100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *In re Volkswagen AG*, 371 F. 3d 201, 204-205 (5th Cir. 2004); *accord Ward v. Family Dollar Stores, Inc.*, No. CV-06-CO-01060-W, 2006 U.S. Dist. LEXIS 96846, *9 (N.D. Ala. Sept. 29, 2006) (holding that transfer to district where employer's headquarters was located "would save a considerable amount of resources regarding travel for key corporate witnesses, the transportation of documents and other evidence, and the avoidance of disruption of work and home schedules of the witnesses").

The factor of convenience of witnesses strongly favors transfer.

### 3.    *The Convenience of the Parties Strongly Favors Transfer to the Western District of Pennsylvania*

Notably, the convenience of the parties does not include consideration of the convenience of the attorneys litigating the case. *See Cronos Containers, Ltd.,* 121 F. Supp. at 466 n.4 ("Section 1404(a) is concerned with the convenience of parties and witnesses and not with the convenience of counsel."); *FedEx Ground Package Sys., Inc.*, 2015 WL 790500, at *1 (same).

As explained above, Defendants' headquarters and administrative operations are in the Western District of Pennsylvania. The key witnesses for Defendants are based at these locations, and most of the documents and evidence relevant to the EEOC's claims would come from these locations. In *FedEx Ground*, this factor favored transfer to the Western District of Pennsylvania, where it was "undeniably more convenient" for the employer to litigate, as its headquarters, and many of its officers, directors, and relevant documentation were in the Western District of Pennsylvania. *FedEx Ground Package Sys., Inc.*, 2015 WL 790500, at *2.

The only party plaintiff in this matter is the EEOC, so there are no individual plaintiffs for whom convenience should be considered. Regardless of venue, the EEOC would likely suffer no meaningful inconvenience by litigating this matter in the Western District of Pennsylvania, as the

Commission's Pittsburgh Area Office conducted the underlying charge investigations and one of the counsel of record for the EEOC is located in Pittsburgh.

The factor of convenience of the parties strongly favors transfer.

### 4. *The Case Should be Transferred to the Western District of Pennsylvania to Promote the Interest of Justice*

"Consideration of the interest of justice factor is intended to encompass all those factors bearing on transfer that are unrelated to convenience of witnesses and parties." *D2L Ltd.*, 671 F. Supp. 2d at 783 (quoting *Howard Univ.*, 2007 WL 763182, at *5).

The District of Maryland is slightly more congested than the Western District of Pennsylvania. According to the website for the Administrative Office of the United States Courts (available at http://uscourts.gov/statistics-reports/), in the 12-month period ending on December 31, 2023, there were 10 judgeships in the District of Maryland with 511 pending cases per judge, while the Western District of Pennsylvania also had 10 judgeships with 351 pending cases per judge. *Id.* Because the District of Maryland is more congested, transfer of this action to the Western District of Pennsylvania will promote judicial efficiency and speedy resolution. In *FedEx Ground*, the court similarly found that the difference in congestion, while not a significant factor, still weighed in favor of transfer. *FedEx Ground Package Sys., Inc.*, 2015 WL 790500, at *2.

Finally, transfer will not disrupt this litigation or result in a waste of judicial resources because this case is in its infancy, and Defendants have not yet filed any responsive pleading to the Commission's Complaint.

### V. CONCLUSION

For the reasons set forth above, Defendants respectfully request that this Court grant their motion and transfer this action to the U.S. District Court for the Western District of Pennsylvania.

                                Respectfully submitted,

                                LITTLER MENDELSON, P.C.

                                */s/ Steven E. Kaplan*

                                Steven E. Kaplan (Md. Fed. Bar No. 16531)
                                skaplan@littler.com
                                815 Connecticut Avenue, NW, Suite 400
                                Washington, DC 20006-4046
                                Tel: 202.842.3400
                                Fax: 202.842.0011

                                Robert W. Cameron (PA Bar No. 69059)*
                                bcameron@littler.com
                                Katelyn W. McCombs (PA Bar No. 323746)*
                                kmccombs@littler.com
                                625 Liberty Avenue
                                26th Floor
                                Pittsburgh, PA 15222
                                Tel: 412.201.7600
                                Fax: 412.774.1948

                                *Counsel for Defendants*

Dated: June 12, 2024                 *\* Pro Hac Vice Forthcoming*

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of June 2024, the foregoing Defendants' Memorandum of Law in Support of Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) was filed using the USDC District of Maryland's ECF system, through which this document is available for viewing and downloading, causing a notice of electronic filing to be served upon the following counsel of record.

Debra M. Lawrence, Esq.
EEOC - Baltimore Field Office
George H. Fallon Federal Building
31 Hopkins Plaza, Suite 1432
Baltimore, MD 21201
debra.lawrence@eeoc.gov

Ronald L. Phillips, Esq.
EEOC - Baltimore Field Office
George H. Fallon Federal Building
31 Hopkins Plaza, Suite 1432
Baltimore, MD 21201
ronald.phillips@eeoc.gov

Gregory A. Murray, Esq.
EEOC - Pittsburgh Area Office
William S. Moorhead Federal Building
1000 Liberty Avenue, Suite 1112
Pittsburgh, PA 15222
gregory.murray@eeoc.gov

/s/ Steven E. Kaplan
Steven E. Kaplan