**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION**

| | | |
|---|---|---|
| **U.S. EQUAL EMPLOYMENT** | ) | |
| **OPPORTUNITY COMMISSION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civ. Action No. 1:24-cv-01123-JRR** |
| | ) | **Honorable Julie R. Rubin** |
| **SHEETZ, INC., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

**<ins>EEOC'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO
TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)</ins>**

**TABLE OF CONTENTS**

INTRODUCTION AND SUMMARY ........................................................................... 1

LEGAL STANDARD.............................................................................................3

ARGUMENT .................................................................................................... 4

    I.      Section 706 of Title VII Authorizes Venue in the District of Maryland. ....................... 4

    II.    EEOC's Choice of Venue Is Entitled to Substantial Weight. ......................................... 5

    III.   The Convenience of Witnesses Weighs Strongly Against Transfer to the Western District of Pennsylvania. ..............................................................................12

    IV.   The Convenience of Parties Also Weighs Against Transfer to the Western District of Pennsylvania.....................................................................................20

    V.    The Interest of Justice Weighs Against Transfer to the Western District of Pennsylvania.....................................................................................24

CONCLUSION...................................................................................................28

## INTRODUCTION AND SUMMARY

Plaintiff U.S. Equal Employment Opportunity Commission ("EEOC") hereby files the instant Memorandum in Opposition to Defendants Sheetz, Inc.'s, Sheetz Distribution Services, LLC's, and CLI Transport, LP's (collectively, "Defendants") Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a).

On April 17, 2024, EEOC instituted this civil enforcement action under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), to correct unlawful employment practices because of race and to secure remedies for the American public and a class of aggrieved Black, American Indian/Alaska Native, and multiracial job applicants who were adversely affected by those practices. EEOC has pleaded claims that Defendants have subjected a class of aggrieved Black, American Indian/Alaska Native, and multiracial job applicants to an ongoing, company-wide practice of refusing to hire such persons because of information about their criminal justice histories, including but not limited to convictions, that has caused unlawful disparate impact because of race in violation of Title VII. ECF No. 1 at 1–2. On June 12, 2024, Defendants filed the present Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) seeking transfer of this action to the Johnstown courthouse[1] of the U.S. District Court for the Western District of Pennsylvania. ECF Nos. 14–15.

---

[1] As Defendants state in their Motion, if transferred, this matter would be assigned to the Johnstown courthouse in the Western District of Pennsylvania. *See* Local Rules of Court – U.S. District Court for the Western District of Pennsylvania, LCvR 3 (effective Nov. 1, 2016) ("Should it appear from the complaint, petition or other pleading that the claim arose *OR any plaintiff or defendant resides in: Bedford, Blair, Cambria, Clearfield or Somerset County*, the Clerk of Court shall give such complaint, petition or other pleading a Johnstown number and it shall be placed on the Johnstown docket.") (emphasis added); *see also* ECF No. 15 at 11 (identifying Johnstown as venue Defendants seek).

Defendants' Motion is meritless and should be denied. Applying the four factors governing transfer motions under 28 U.S.C. § 1404(a), Defendants have failed to satisfy their burden to demonstrate that this action must be transferred.

EEOC's chosen venue in this Court is entitled to substantial weight. It is well established that a plaintiff's chosen forum should rarely be disturbed. Title VII contains a special venue provision that specifically authorizes venue in this Court, as the unlawful practices at issue in this action were and continue to be committed in this judicial District and aggrieved persons would have worked in this District but-for the unlawful practices. Consistent with the federal courts' treatment of special venue provisions generally, this special venue provision warrants heightened deference to EEOC's choice of forum. Moreover, the District of Maryland bears an important relation to this case, as it is undisputed that Defendants conduct substantial operations here.

The convenience of witnesses factor weighs against transfer, as the District of Maryland's Baltimore courthouse is a more accessible and convenient venue than the Western District of Pennsylvania's Johnstown courthouse for key non-party witnesses to this case, EEOC's expert witnesses and the aggrieved job applicants. Moreover, the convenience of these witnesses outweighs that of Defendants' corporate witnesses, whose presence Defendants can readily obtain for trial.

The convenience of parties factor also militates against transfer, as transferring venue to the Western District of Pennsylvania would significantly increase EEOC's cost of obtaining the attendance of its witnesses at trial, as well as opportunity costs to the agency's other enforcement activities resulting from the need for its mostly Baltimore-based litigation team to travel to Western Pennsylvania. Defendants' Motion thus seeks to merely shift inconvenience from Defendants to EEOC, which does not support transfer. And the physical location of the relevant business records that will serve as key proof in this case is immaterial because those records are mainly electronic

data, and a large portion of that data is in the possession of a third-party that is not located in either forum.

Finally, the interest of justice also disfavors transferring venue to the Western District of Pennsylvania because docket statistics indicate that the District of Maryland is the more expeditious venue, and Defendants have not asserted, nor can they demonstrate, that there is any local interest warranting transfer in this multi-state case.

Thus, venue is proper in the District of Maryland, and Defendants have failed to satisfy their burden as movant to demonstrate substantial reasons to disregard the deference accorded to EEOC's selection of forum.  For the reasons set forth more fully below, EEOC respectfully requests that the Court enter an order denying Defendants' Motion.

## LEGAL STANDARD

Title VII contains a special venue provision providing that venue is proper in any of the following fora: (1) "any judicial district in the State in which the unlawful employment practice is alleged to have been committed," (2) "the judicial district in which the employment records relevant to such practice are maintained and administered," or (3) "the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice." 42 U.S.C. § 2000e–5(f)(3). If none of these three locations provide a forum, then venue is also authorized in the district where the defendant keeps its principal office. *Id*.

On a motion to transfer venue pursuant to 28 U.S.C. § 1404(a), "the burden is on the moving party to show that transfer to another forum is proper." *Karn v. PTS of America, LLC*, No.: GJH-16-3261, 2019 WL 556970, at *2 (D. Md. Feb. 11, 2019) (internal quotation marks and citation omitted). "To prevail on a motion to change venue pursuant to § 1404, the defendant must show by a preponderance of the evidence that the proposed transfer will better and more

conveniently serve the interests of the parties and witnesses and better promote the interests of justice." *Jones v. Koons Automotive, Inc*., 752 F. Supp. 2d 670, 681–82 (D. Md. 2010) (internal quotation marks and citation omitted); *see also AAI Corp. v. Applied Geo Technologies, Inc*., Civil No. JKB-11-608, 2011 WL 3678903, *2 (D. Md. Aug. 22, 2011) ("The moving party bears the burden of establishing that transfer to another venue is proper."). "Mere assertions of inconvenience or hardship, without more, are insufficient to sustain a motion under Section 1404(a)." *Jones*, 752 F. Supp. 2d at 681.

In deciding whether to transfer venue under § 1404(a), the federal courts consider the following four factors: "(1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." *Trustees of the Plumbers and Pipefitters Nat. Pension Fund v. Plumbing Serv., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015) (internal citations omitted).

Under Fourth Circuit law, unless the moving party can carry its burden of demonstrating that the balance of factors "'is *strongly* in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'" *Collins v. Straight, Inc.*, 748 F.2d 916, 921 (4th Cir. 1984) (*quoting Gulf Oil v. Gilbert*, 330 U.S. 501, 508 (1946)) (emphasis added). The decision whether to transfer venue under § 1404(a) is committed to the sound discretion of the district court. *In re Ralston Purina Co.*, 726 F.2d 1002, 1005 (4th Cir. 1984).

## ARGUMENT

## I.    Section 706 of Title VII Authorizes Venue in the District of Maryland.

As a threshold matter, by operation of the special venue provision set forth in Section 706 of Title VII, 42 U.S.C. § 2000e–5(f)(3), venue is clearly proper in the District of Maryland. Title VII authorizes venue in any judicial district where the unlawful practice is alleged to have been

committed, where the employment records are kept, or where the aggrieved person(s) would have worked but for the alleged unlawful practice. *Id.* EEOC alleges, and Defendants admit, that Defendants conduct operations and maintain numerous facilities in Maryland. *See* ECF No. 1 ¶¶ 4–6,11; ECF No. 15-1 ¶¶ 26, 28; ECF No. 15-2 ¶ 16. All job applicants for positions at those facilities are subjected to Defendants' company-wide criminal justice history screening practice that is the subject of EEOC's race discrimination claims in this action. *See* ECF No. 1 ¶¶20, 31, 36, 41. Indeed, EEOC is currently aware of over 1,000 aggrieved persons who were adversely affected by those practices and who reside in 30 states and the District of Columbia, which includes workers in Maryland (Exhibit 1, Declaration of Martha Foster ("Exhibit 1") ¶ 7). Thus, the unlawful employment practices at issue in this action have been and continue to be committed in the District of Maryland, *see* ECF No. 1 ¶¶ 2, 20, and aggrieved persons would have worked in this District but-for those practices. Accordingly, EEOC's decision to institute this public enforcement action in this Court is specifically authorized by Title VII's special venue provision.

## II.    EEOC's Choice of Venue Is Entitled to Substantial Weight.

EEOC's choice of venue is entitled to substantial weight, particularly because the District of Maryland bears a substantial relation to the cause of action in this suit. It is well established that "[u]nless the balance of factors points strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *CV Restoration, LLC v. Diversified Shafts Sols., Inc.*, No. ELH-16-2102, 2016 WL 6648750, at *4 (D. Md. 2016) (quoting *Collins*, 748 F.2d at 921) (internal quotation marks omitted); *Karn*, 2019 WL 556970, *5. "This is particularly true where the chosen forum is the plaintiff's home or bears a substantial relation to the cause of action." *Karn*, 2019 WL 556970, at *5. Here, EEOC's Complaint alleges that the unlawful employment practices have been and are being committed in the District of Maryland. *See* ECF No. 1 ¶¶ 2, 20. The Complaint also

alleges that Defendants maintain numerous facilities in Maryland, which Defendants have admitted. *See* ECF No. 1 ¶¶ 4–6,11; ECF No. 15-1 ¶¶ 26, 28; ECF No. 15-2 ¶ 16. Specifically, Defendants have admitted that they maintain at least 35 facilities in Maryland. ECF No. 15-1 ¶ 28; ECF No. 15-2 ¶ 16. This action further bears a substantial relation to the District of Maryland because job seekers who reside in Maryland or sought employment with Defendants at one of their numerous Maryland facilities were directly harmed by the challenged employment practice in Maryland.

Moreover, the fact that this action was instituted under the special venue provision of Title VII warrants that even greater weight be accorded to EEOC's choice of venue.  The rights protected by Title VII and the other components of the Civil Rights Act of 1964 were considered by Congress to be of the highest national priority. *See, e.g., Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974) (citing *Newman v. Piggy Park Enterprises, Inc.*, 390 U.S. 400 (1968)).  Title VII's venue provision reflects Congress's intent to permit Title VII plaintiffs wide latitude in choosing the forum to vindicate those critically important rights. *See*, *e.g*., *Passantino v. Johnson & Johnson Consumer Products, Inc.*, 212 F.3d 493, 504 (9th Cir. 2020) (noting federal courts have concluded that "this broad provision for alternative forums was necessary to support the desire of Congress to afford citizens full and easy redress of civil rights grievances") (*quoting Richardson v. Alabama State Board of Education*, 935 F.2d 1240, 1248 (11th Cir.1991)).

As Judge Merhige concluded in *Gilbert v. General Elec. Co.*, 347 F. Supp. 1058 (E.D. Va. 1972), *aff'd sub nom. General Electric Co. v. Merhige*, No. 72-2237, 1972 WL 2601 (4th Cir. Nov. 20, 1972), Section 706(f)(3) is a "special venue" provision that effectuates legislative intent to "allow plaintiffs a particularly wide latitude in choosing the situs of their litigation" in order to afford "full redress of civil rights grievances." *Id*. at 1060.  The court further observed:

> The broad latitude given by the statute is particularly engaging when taken in conjunction with class actions. Such actions, which are particularly appropriate and

plentiful under Title VII, are often of interstate or intrastate character, stretching in geographical impact beyond the limits of particular divisions or state districts. In this light, determination of venue merely upon the named litigants would have an arbitrary effect.

*Id.*

In that regard, a number of federal courts have concluded that Section 706(f)(3) of Title VII is a special venue provision that warrants additional deference to a plaintiff's selection of forum when weighing Section 1404(a) factors. *See Wellens v. Daiichi Sankyo Co., Inc.*, No. C 13–00581 CW, 2013 WL 3242294, at *3 (N.D. Cal. June 25, 2013) ("'[A] plaintiff's choice of forum is entitled to greater deference where a case arises under Title VII.'") (*quoting Ellis v. Costco Wholesale Corp.*, 372 F. Supp. 2d 530, 537 (N.D. Cal. 2005)); *Turnley v. Banc of Am. Inv. Servs., Inc.,* 576 F. Supp. 2d 204, 217 (D. Mass. 2008) (noting plaintiff's choice of forum entitled to "arguably even greater weight than usual in the Title VII context") (*citing Ellis,* 372 F. Supp. 2d at 537); *Berry v. Potter*, No. CIV 04-2922 PHX RCB, 2006 WL 335841, at *4 (D. Ariz. Feb. 10, 2006) (noting enhanced deference to choice of venue in Title VII cases).

The foregoing conclusions are consistent with the federal courts' treatment of special venue provisions in other regulatory statutes.  The federal courts have consistently held that where a statutory regime contains a specific venue provision granting plaintiffs an expansive choice of forum, a plaintiff's choice of forum pursuant to that provision is entitled to heightened deference absent a substantial showing that transfer is warranted under the § 1404(a) factors. *See, e.g., Hutchison v. Union Pac. R. Co.*, No. 10-CV-03018-REB-MEH, 2011 WL 4433819, at *1 (D. Colo. Sept. 22, 2011) (denying defendant's motion to transfer and explaining that Federal Employer's Liability Act choice-of-venue provision accords plaintiff's choice of venue "great weight"); *Askew v. CSX Transp., Inc.*, No. 05-cv-5915, 2008 WL 4347530, *1 (E.D. Pa. 2008) (recognizing that, in FELA cases, "plaintiff's choice of forum requires notable deference, notwithstanding plaintiff's

residence or the location of the underlying actions in the case."); *Int'l Painters and Allied Trades Indus. Pension Fund v. Tri-State Interiors, Inc.*, 357 F. Supp. 2d 54, 56 (D.D.C. 2004) (granting plaintiff's choice of venue greater deference pursuant to Employee Retirement Income Security Act's special venue provision); *see also Ford Motor Co. v. Ryan*, 182 F.2d 329, 330 (2d Cir. 1950) (holding in anti-trust action, "[T]he plaintiff's privilege, conferred by statute, of choosing the forum he selected is a factor to be considered as against the 'convenience' of the witnesses or what otherwise might be the balance of 'convenience' as between 'the parties.'").

Such deference is accorded regardless of whether the action was instituted by a private plaintiff or the federal government, and regardless of whether relief is sought for a class. *See United States v. United States Sugar Corp.*, No. CV 21-1644 (MN), 2022 WL 354228, at *3 (D. Del. Jan. 11, 2022) (holding federal government's choice of venue entitled to great deference, citing special venue provision in Section 12 of Clayton Act); *FTC v. Big Dog Solutions LLC*, No. 16-cv-6607, 2016 WL 5391391, *2 (N.D. Ill. Sept. 27, 2016) (holding federal government's chosen forum is accorded substantial weight where it is selected under the Federal Trade Commission Act's special venue statute, and the alleged violation was executed across the country); *U.S. v. Brown University in the State of R.I. and Providence Plantations et al*., 772 F. Supp. 241, 242 (E.D. Pa. 1991) (noting federal government's chosen forum in an antitrust suit is "entitled to heightened respect" under the Clayton Act's liberal venue requirements); *In re Laidlaw Sec. Litig.*, No. 91–1289, 1991 WL 170837, *2 (E.D. Pa. Aug. 27, 1991) (holding plaintiff's choice of venue in a class action entitled to greater deference under the Securities and Exchange Act of 1934's special venue provision).

The decisions that Defendants cite for their argument that lessened deference has been applied to actions seeking remedies for a class are readily distinguishable. Each noted that a class representative's choice of forum in a putative class action is a less significant consideration than

in an individual action because where there are many plaintiffs, the argument that any one plaintiff's preferred forum is appropriate merely because it is her home is weakened. *See Gomez v. Kroll Factual Data*, No. 8:12-cv-2773-AW, 2013 WL 639042, at *2 (D. Md. Feb. 20, 2013); *In re Warrick*, 70 F.3d 736, 741 & n.7 (2d Cir. 1995); *Owner-Operator Indep. Drivers Ass'n v. N. Am. Van Lines, Inc.*, 382 F. Supp. 2d 821, 824 (W.D. Va. 2005). [2] But this case is not a class action under Rule 23, and there is only one plaintiff: EEOC. EEOC does not serve as a class representative but exercises its independent authority as a federal agency to sue in its own name to vindicate the public interest. *See, e.g., Gen. Tel. Co. of the Nw. v. EEOC*, 446 U.S. 318, 326 (1980) ("EEOC is not merely a proxy for the victims of discrimination and [] the EEOC's enforcement suits should not be considered representative actions subject to Rule 23. * * * When the EEOC acts, albeit at the behest of and for the benefit of specific individuals, it acts also to vindicate the public interest in preventing employment discrimination."). Thus, the fact that the aggrieved persons are spread across a number of states does not undermine the weight accorded to EEOC's chosen venue. Those workers are not parties to this public enforcement action, whether directly or by proxy. *See, e.g., id.* at 326; *EEOC v. Bd. of Regents of Univ. of Wis. Sys.*, 288 F.3d 296, 305 (7th Cir. 2002) ("[C]harging parties are not actual parties to this lawsuit."); *EEOC v. Res. for Human Dev., Inc.*, 827 F. Supp. 2d 688, 799–900 (E.D. La. 2011) (holding EEOC not judicially estopped from bringing claims because charge-filing claimant was not party to enforcement action); *EEOC v. Digital*

---

[2] Upon concluding that a private plaintiff's choice of forum in a putative class action is owed less significant consideration than in an individual action, each of these decisions cited, directly or indirectly, to *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518 (1947). *See Gomez*, 2013 WL at *2; *In re Warrick*, 70 F.3d at 741 & n.7; *Owner-Operator Indep. Driver Ass'n*, 382 F. Supp. at 824. Specifically, these cases cite to *Koster*'s observation that, where there are many plaintiffs, that any one plaintiff's preferred forum is appropriate merely because it is her home is weakened. *See Koster*, 330 U.S. at 524. As discussed *infra*, that rationale does not apply to an EEOC enforcement action.

*Connections, Inc.*, No. 3:05-cv-0710, 2006 WL 2792219, at *3 (M.D. Tenn. Sep. 26, 2006) ("The fact remains, however, that the EEOC, as the plaintiff party, decided to bring this lawsuit . . .. [Charging party] did not file the action, she is not a party to it, and she did not control the EEOC's decision to bring the action.").[3]

Defendants' remaining arguments also do not undermine the substantial weight accorded to EEOC's chosen forum. Contrary to Defendants' argument, the fact that EEOC's Complaint does not specifically identify the location of all aggrieved persons in this action is immaterial. Though discovery has not yet commenced, EEOC is currently aware of over 1,000 aggrieved persons who reside in the District of Columbia and 30 states, including Maryland (Exh. 1 ¶¶6, 7). Defendants admit to currently operating at least 35 facilities in the State of Maryland, *see* ECF No. 15-1 at ¶ 28; ECF No. 15-2 at ¶ 14, and to their personnel routinely conducting additional business operations here, such as petroleum and other product distribution in support of their facilities, *see* ECF No. 15 at 3 (discussing operations of Defendants Sheetz Distribution Services, LLC and CLI Transport, LP); ECF No. 15-2 at ¶¶ 10, 14-16, and they do not deny that there are numerous workers who were adversely affected by the challenged employment practice, which they admittedly implemented regarding hiring for positions in this District. ECF No. 15-1 ¶¶19, 28; ECF No. 15-2 ¶ 16. Thus, both in terms of the locus of Defendants and aggrieved persons and the locus of the challenged employment practices, there is a clear connection to the District of Maryland. *See* Exh. 1 at ¶ 7; ECF No. 15-1 ¶¶19, 28; ECF No. 15-2 ¶ 16. That connection supports granting significant weight to EEOC's chosen forum, as the challenged employment practice governs Defendants'

---

[3] EEOC also notes that in addition to victim-specific remedies, it also seeks equally important prospective relief in this case. The physical location of aggrieved persons is less important to claims for prospective remedies. *See Abney* v. *Federal Correctional Institution McDowell*, Case No. 1:23-cv-00027-JRR, 2023 WL 4421404, *3–4 (D. Md. July 10, 2023).

Maryland operations and it directly harmed, and continues to harm, job seekers in Maryland. *See supra* at pp. 5-6. [4]

Moreover, contrary to Defendants' suggestion, the location of the EEOC office assigned to conduct the pre-suit investigation is immaterial to the § 1404(a) analysis in this company-wide disparate impact case. Title VII's venue provision, which governs the proper venue for a Title VII enforcement action, does not list the location of the EEOC office that happened to receive the administrative charges as a basis for venue. *See* 42 U.S.C. § 2000e–5(f)(3). Moreover, this is a company-wide litigation that is not limited to aggrieved workers in Pittsburgh. And importantly, this action also does not involve any judicial review of agency administrative proceedings. Unlike some federal agencies, EEOC does not conduct administrative adjudications that impose liability or otherwise fix rights, and its federal court enforcement actions are trial *de novo*. Accordingly, the sufficiency of an EEOC pre-suit investigation or adequacy of the evidence supporting its reasonable cause findings are non-reviewable. *See, e.g.*, *Georator Corp. v. EEOC*, 592 F.2d 765, 767 (4th Cir. 1979) (holding EEOC lawsuits are tried *de novo* and federal court does not assess adequacy of evidence supporting EEOC's reasonable cause finding); *see also EEOC v. Keco Indus., Inc.*, 748 F.2d 1097, 1100 (6th Cir. 1984) (holding district court erred in inquiring into the sufficiency of EEOC's investigation, discussing non-adjudicatory character of EEOC administrative proceedings). Therefore, the fact that EEOC's company-wide investigation of Defendants happened to be assigned to EEOC's Pittsburgh office is of no moment in this case.

---

[4] Further, the locations of the two charging parties who filed the underlying charges of discrimination referenced in the Complaint are irrelevant, as EEOC is not seeking relief for either of them in this action. In fact, as Defendants are well-aware, the portion of EEOC's reasonable cause finding that was specific to Charging Party Gorsuch's individual Title VII rights was limited to sex discrimination, a claim not presented in this action.

Finally, the presumption in favor of EEOC's choice of venue remains notwithstanding that EEOC is a federal government agency. A government agency's choice of forum, even if analyzed somewhat differently than a private plaintiff's choice of forum, still weighs against transfer. *See EEOC v. FedEx Ground Package System, Inc.,* No. WMN–14–3081, 2015 WL 790500, at *1 (D. Md. Feb. 24, 2015) (*quoting EEOC v. Texas Roadhouse, Inc.*, Civ. No. 11–11732, 2012 WL 5894910, at *1 (D. Mass. Nov. 9, 2012)) (noting that "the presumption in favor of the plaintiff is not eliminated" and the government's choice of venue is still entitled to deference). And as discussed, the deference accorded to the federal government's choice of forum is heightened in public enforcement actions instituted under special statutory venue provisions. *See United States Sugar Corp.*, 2022 WL 354228, at *3 (holding federal government's choice of venue entitled to great deference, citing special venue provision in Section 12 of Clayton Act); *Big Dog Solutions LLC*, 2016 WL at *2 (affording FTC's selected forum substantial weight pursuant to the Federal Trade Commission Act's special venue statute); *Brown University in the State of R.I. and Providence Plantations et al.*, 772 F. Supp. at 242 (noting federal government's chosen forum in antitrust suit is "entitled to heightened respect" under the Clayton Act's liberal venue requirements).

## III.    The Convenience of Witnesses Weighs Strongly Against Transfer to the Western District of Pennsylvania.

In deciding a motion to transfer venue, the convenience of the witnesses is one of the most important factors to be considered. *Karn v. PTS of America, LLC*, No.: GJH-16-3261, 2019 WL 556970, *5 (D. Md. Feb. 11, 2019). Importantly, "the critical determination under this factor is the convenience of the forum to *key non-party* witnesses." *Id.* (emphasis added) (*quoting Weintraub v. Advanced Corr. Healthcare*, 161 F. Supp. 3d 1272, 1280 (N.D. Ga. 2015)).  When evaluating witness convenience under Section 1404(a), it is well established that a central consideration is the nature of the witnesses' anticipated testimony and the relative importance of that testimony to the

case rather than the mere number of witnesses. *See, e.g., Karn v. PTS of America, LLC,* No.: GJH-16-3261, 2019 WL 556970, *5 (D. Md. Feb. 11, 2019); *Bacik v. Peek*, 888 F. Supp. 1405, 1415 (N.D. Ohio 1993) ("'The party seeking the transfer must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover. The emphasis must be on the showing rather than on the numbers. One key witness may outweigh a great number of less important witnesses.'") (*quoting Lake v. Richardson–Merrell, Inc.,* 538 F. Supp. 262, 271 (N.D. Ohio 1982)); *Gerber v. Canfield*, 315 F. Supp. 1175, 1178 (D.S.C. 1970) ("To be sure the convenience of witnesses is not weighed from the standpoint of the greater number of witnesses involved, but from consideration of the qualitative value of the testimony of particular witnesses.").

The most important witnesses on liability issues in this action will be the parties' experts and the aggrieved persons who were subject to Defendants' criminal justice history screening.

Expert witnesses are of central importance in any disparate impact case. Expert witness testimony is generally the most important proof bearing on liability in disparate impact cases, including cases such as the present action challenging criminal justice history screening practices. *See, e.g., Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977, 994-97 (1988) (discussing use of statistical evidence in disparate impact litigation); *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 265 (4th Cir. 2005) (affirming summary judgment on disparate impact claim after exclusion of testimony of plaintiff's statistical expert); *El v. Se. Pennsylvania Transp. Auth. (SEPTA),* 479 F.3d 232, 246-47 (3d Cir. 2007) (affirming summary judgment for defendant-employer; discussing defendant's presentation of evidence from three experts on business necessity defense and noting plaintiff's failure to present expert testimony or otherwise rebut defendant-employer's expert evidence); *Contreras v. City of Los Angeles,* 656 F.2d 1267, 1284-85 (9th Cir.

1981) (discussing defendant's expert validation evidence regarding business necessity defense and plaintiff's expert evidence regarding alternative employment practices); *Green v. Missouri Pac. R. Co.*, 523 F.2d 1290, 1298 (8th Cir. 1975) (discussing defendant-employer's expert witness testimony on business necessity defense).

As part of its prima facie case, EEOC will be required to present evidence establishing that Defendants' criminal justice history screening caused disparate impact because of race. As is true of plaintiffs in most disparate impact cases, in this case EEOC will present such proof in the form of expert witness testimony discussing statistical analyses and opinions. In such cases, defendants generally present contrary expert testimony on disparate impact, and it is reasonable to conclude that Defendants will likely offer such testimony in this case. Moreover, it seems highly likely that Defendants will offer evidence in support of an affirmative defense that their practice is job-related and consistent with business necessity, and EEOC presently intends to offer expert opinion testimony on that issue, which will both serve to illuminate the liability issues and inform the Court's fact-finding concerning appropriate injunctive remedies. Finally, EEOC will also present expert testimony on the issue of alternative employment practices with less disparate impact, and it is reasonable to surmise that Defendants will also present expert opinion evidence on that issue.[5]

---

[5] For this reason among others, Defendants' reliance upon *EEOC v. FedEx Ground Package Sys. Inc.*, No. WMN–14–3081, 2015 WL 790500 (D. Md. Feb. 24, 2015), is misplaced, as that decision is distinguishable on its facts. In contrast to this disparate-impact action alleging an unlawful background screening policy or practice, which is heavily reliant on expert testimony concerning statistical disparities, alternative practices that cause less impact, and other matters, *FedEx Ground* involved claims for denial of communication-based reasonable accommodations for deaf package handlers under the ADA, where expert opinion testimony, while relevant, would be less central to liability fact-finding. *See id.* at *1. Consequently, there was no discussion in *FedEx Ground* of the

It would be premature for EEOC to make disclosure of the identities of its expert witnesses prior to any Rule 26(a)(2) report deadlines that will be set by the Court. However, the undersigned EEOC counsel represents that at the time of trial the agency's anticipated expert witnesses will reside in various locations in the United States that will require several of the experts to travel by air to either Baltimore or Johnstown from locations in the Midwest and South, while another expert could travel from New York City by rail if the location is Baltimore but likely must travel by air if the location is Johnstown. It seems reasonable to assume that Defendants' expert witnesses will also reside in various locations outside of western Pennsylvania that will render Baltimore a more convenient forum for those defense witnesses as well.

The other group of centrally important non-party witnesses in this case are the aggrieved job applicants who were rejected by Defendants' criminal justice history screening. As part of its fact-finding regarding the business necessity affirmative defense, the Court will be required to determine whether Defendants have proven that the workers they disqualified under their criminal justice history screening practice actually presented a substantial risk of serious harm in the particular jobs at issue at the time they applied. *See, e.g., Dothard v. Rawlinson*, 433 U.S. 321, 332 n. 14 (1977) (stating employer bears burden of proving practice causing disparate impact is necessary for safe and efficient job performance); *Robinson v. Lorillard Corp.*, 444 F.2d 791, 798 (4th Cir. 1971) ("The test is whether there exists an overriding legitimate business purpose such that the practice is necessary to the safe and efficient operation of the business. Thus, the business purpose must be sufficiently compelling to override any racial impact; the challenged practice must

---

convenience of expert witnesses and experts costs associated with a less accessible trial location such as Johnstown. *See id.*

effectively carry out the business purpose it is alleged to serve; and there must be available no acceptable alternative policies or practices which would better accomplish the business purpose advanced, or accomplish it equally well with a lesser differential racial impact"); *Wright v. Olin Corp.*, 697 F.2d 1172, 1190 (4th Cir. 1982) (holding under business necessity standard that employer must demonstrate fetal protection policy effective in eliminating "significant risks of harm"), *abrogated on other grounds by International Union, United Auto., Aerospace and Agr. Implement Workers of America, UAW v. Johnson Controls, Inc.*, 499 U.S. 187 (1991).

On that issue of alleged risk, the parties will adduce testimony from the aggrieved job applicants on matters within their own personal knowledge, such as the conduct and surrounding circumstances that led to their convictions, relevant aspects of their employment histories (e.g., performance of similar jobs without incident post-conviction), their post-conviction rehabilitation efforts, and other aspects of their individual circumstances that are relevant to an assessment of risk. *See, e.g.,* EEOC ENFORCEMENT GUIDANCE ON THE CONSIDERATION OF ARREST AND CONVICTION RECORDS IN EMPLOYMENT DECISIONS UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, NO. 915.002, at Sections V.B.1.–V.B.9. (Apr. 25, 2012) (discussing salient scientific research, factual issues, and legal framework for analysis of affirmative defense in context of criminal justice history screening) (available at https://www.eeoc.gov/laws/guidance/enforcement-guidance-consideration-arrest-and-conviction-records-employment-decisions).

Moreover, the aggrieved workers are also the most important sources of fact evidence on remedies, i.e., their interim employment, mitigation efforts, and back pay and front pay losses, matters uniquely within their knowledge. Some may also provide important testimony about their own experience with Defendants' criminal justice history screening, admissions by Defendants'

officials about their exclusions from employment, and how Defendants' screening actually operated in practice.

EEOC will require discovery to identify all of the aggrieved job applicants who Defendants subjected to their criminal justice screening practice. However, the presently known aggrieved persons reside in all six of the states where Defendants conduct operations, among others. *See* Exh. 1 at ¶ 7; ECF No. 15-1 at ¶ 26. EEOC anticipates that it will present in-person trial testimony of at least some of these witnesses, and they will need to travel by air to the site of trial from various parts of the country.

For these two most important categories of witnesses, Baltimore is a far more accessible and convenient venue than Johnstown, PA, whether by air or ground transportation. This Court is an approximate 15-minute drive from Baltimore/Washington International Thurgood Marshall Airport ("BWI"), a major airport that consistently ranks in the top 25 U.S. airports by volume of passengers. *See* Federal Aviation Administration, CY 2023 Enplanements at All Commercial Service Airports – Preliminary (available at https://www.faa.gov/sites/faa.gov/files/2024-06/cy23-commercial-service-enplanements-preliminary.pdf). In contrast, the largest airport located in Defendants' proposed forum is Pittsburgh International Airport ("PIT"), which handles less than half of the volume of domestic flights and only about 40% of the volume of passengers as compared to BWI.[6] PIT also services only about 60% of the number of domestic and international destinations

---

[6] For the 2023 calendar year, BWI serviced 98,519 domestic passenger flights whereas PIT serviced only 43,086 domestic passenger flights. *See* U.S. Bureau of Transportation Statistics (available at https://www.transtats.bts.gov/Data_Elements.aspx?Data=1). For the same calendar year, BWI serviced 12,543,561 passengers on domestic passenger carriers whereas PIT serviced only 4,304,009 passengers on such carriers. *See id*.

served by BWI.[7] Witnesses traveling to Johnstown via a flight to PIT will also be required to travel

85.6 miles (almost two hours by car) to the Johnstown courthouse, requiring significant additional

time and expense.[8] Baltimore is also far better connected to other locations by rail service, and

given the locations of Defendants' facilities (Virginia, West Virginia, North Carolina, Ohio, Mar-

yland, Pennsylvania), Baltimore is more centrally located than Johnstown for purposes of car travel

to trial. In fact, Baltimore is more convenient for many witnesses in Pennsylvania.[9] Baltimore also

offers more numerous and convenient lodging and public transportation options for witnesses than

the Johnstown area, a city with a population of approximately 18,000 people.

Thus, the District of Maryland is generally more accessible and convenient for the non-

party witnesses whose testimony will be most important to determining liability and remedies is-

sues in this case. In contrast, the only witnesses whom Defendants claim are inconvenienced by

---

[7] Whereas BWI services over 90 domestic and international destinations, PIT services only 60 destinations in total. *See* Baltimore International Airport – Flying With Us (available at https://bwiairport.com/flying-with-us/); Pittsburgh International Airport – Destinations (available at https://flypittsburgh.com/destinations/).

[8] EEOC requests that the Court take judicial notice of the distance between these locations and others discussed herein, as reflected using Google Maps and other similar sources, as well as other commonly known facts, such as city features and population sizes. These facts are generally known within the territorial jurisdiction of the Court or can be accurately and readily determined from sources that cannot reasonably be questioned. *See, e.g.,* Fed. R. Evid. 201(b)(1) & (2); *Ramani v. Genesis Healthcare, Inc.,* No. GJH-19-3342, 2021 WL 211302, at *3, n.2 (D. Md. Jan. 21, 2021) (noting federal courts may take judicial notice of geographic distance under Fed. R. Evid. 201(b)(2).

[9] Even for many areas of eastern and central Pennsylvania where Defendants have facilities, Bal-timore is more accessible than the Western District of Pennsylvania. For instance, from Harrisburg, Pennsylvania, it takes about 1.5 hours (79.9 miles) to drive to Baltimore, compared to about 2.5 hours (137 miles by toll roads) to drive to the closest Western District of Pennsylvania courthouse in Johnstown.

venue in this Court are their own corporate witnesses.  But Defendants' evidence on this point falls far short of meeting its burden to overcome the deference accorded EEOC's choice of forum and to show that there are substantial reasons weighing in favor of transfer.

Notably, the convenience of current corporate employee witnesses does not provide any substantial reason for transfer. "[T]he convenience of witnesses who are employees of a party is entitled to less weight because that party can obtain their presence at trial." *Karn*, 2019 WL 556970, at *5 (quoting *CV Restoration, LLC*, 2016 WL 6648750, at *5) (alteration added); *see also e.g., Brown University in the State of R.I. and Providence Plantations et al.,* 772 F. Supp. at 243 ("This factor does not warrant transfer when witnesses are employees of a party and their presence can be obtained by that party."); *Samsung Electronics Co., Ltd. v. Rambus*, Inc., 386 F. Supp. 2d 708, 718 (E.D. Va. 2005) (noting the convenience of party witnesses should be afforded less weight as party witnesses are presumed to be more willing to testify in a different forum). That is especially true in this case given the relatively minimal burden on Defendants' corporate witnesses of traveling to Baltimore.  As Defendants concede, the driving distance from their location in Blair County, PA to Baltimore is only about 160 miles, or approximately three hours travel time, which would not necessarily require an overnight stay.  This is not a case where the corporate witnesses would be asked to travel across the country.

Moreover, Defendants have utterly failed to meet their burden of demonstrating the number of corporate witnesses they claim will be inconvenienced by a three-hour drive, the specific issues that they will testify about, or the relationship of those issues to the Court's fact-finding on likely disputed issues of material fact in this case.  The mere assertion that there is some unspecified number of corporate witnesses involved in conducting Defendants' screening practice is insufficient to carry Defendants' burden under Section 1404(a), especially in light of the number of other

key witnesses in various parts of the country outside of western Pennsylvania. *See Texas Roadhouse*, 2012 WL 5894910, at *4 ("Given the existence of witnesses all over the country, the Court does not find that the convenience of the Kentucky area witnesses, most of whom are Texas Roadhouse employees, is a compelling reason for transfer."). The convenience of Defendants' corporate witnesses is entitled to minimal weight, as Defendants can easily obtain their presence for trial.

Finally, EEOC notes that Defendants' corporate witnesses, as well as other witnesses, would not necessarily need to travel to the forum at all.  They could give live trial testimony by video conference, particularly since this case will be tried to the bench, *see Aoki v. Gilbert*, No. 2:11-cv-02797-TLN-CKD, 2019 WL 1243719, *2 (E.D. Cal. Mar. 18, 2019) (noting the court foresees no issues with determining witness credibility by video, especially where the trial is by judge), and especially since this case involves disparate impact claims where a company's discriminatory motive is not the central issue in the litigation, and therefore, credibility determinations regarding corporate witnesses are often less salient.

Thus, Defendants fail to show, and cannot meet their burden of showing, that the convenience of witnesses favors transfer.

## IV.    The Convenience of Parties Also Weighs Against Transfer to the Western District of Pennsylvania.

On balance, the convenience of parties also weighs against transfer for several reasons.

First, the cost of obtaining the attendance of key witnesses is substantially greater if this action were transferred to the Western District of Pennsylvania. Under the convenience-of-parties factor, the federal courts consider the cost of obtaining the attendance of witnesses. *Menk v. MITRE Corp.*, --- F. Supp. 3d --- , 2024 WL 327087, at *6 (D. Md. Jan. 29, 2024) (*citing Samsung Elecs. Co. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 717 (E.D. Va. 2005)).

EEOC's experts and aggrieved job applicant witnesses are spread across various states, and as discussed, given the relative advantages of Baltimore as a more convenient, centrally located forum for air and other transportation, travel to Johnstown, PA is likely to be much more time consuming and therefore expensive.  For instance, the parties' expert witnesses will have the advantage of far fewer flights, and far fewer direct flights, into Pittsburgh as opposed to Baltimore, followed by the need for two-hour ground transportation to Johnstown.  This will result in much higher expert witness fees charged for the increased travel time, ground transportation costs, and possibly airfare costs.  The cost to EEOC for all of its witnesses is further minimized by the availability of inexpensive interstate public transportation in Baltimore. *See supra* at pp. 17-18. Baltimore is close to and connected by train to at least three other major cities with public transportation hubs. By contrast, none of the venues in the Western District of Pennsylvania is linked to a major city by public transportation. Because transfer to the Western District of Pennsylvania would substantially increase the cost of obtaining the attendance of EEOC's witnesses, the cost of obtaining the attendance of witnesses weighs strongly against transfer.

Furthermore, EEOC notes the greater availability of convenient office space for the litigation teams and their witnesses in Baltimore as opposed to Johnstown. Neither EEOC nor Defendants' counsel maintain offices in Johnstown.  However, EEOC's Baltimore Field Office is located in the Fallon Federal Building directly across the street from this Court. Moreover, it is likely that Defendants and their counsel can more readily make arrangements for temporary workspace in downtown Baltimore as opposed to Johnstown, a city of approximately 18,000 persons with a relatively small downtown area. In fact, if requested, EEOC is willing to make arrangements for Defendants to use GSA conference room space in the Fallon Federal Building, at no cost to Defendants, on a different floor from EEOC's Baltimore office.

Additionally, the convenience of EEOC in having its counsel of record avoid unnecessary travel is a factor that should be considered under the convenience-of-parties factor. EEOC's interest in efficiently litigating civil rights cases directly relates to "the convenience and private interest of a party to the litigation." *Borden, Inc. v. Texaco, Inc*., 526 F. Supp. 1291, 1296 (S.D. Ohio 1981) (noting that expense of hiring and educating new counsel is appropriate consideration under convenience-of-parties factor, as it relates to private interest of party to litigation). Three of the four counsel of record for EEOC in this matter are stationed in Baltimore. EEOC attorneys are employees of the agency, not outside counsel, and they have other mission-critical enforcement duties in numerous other matters unrelated to this case.  In other words, there is a significant opportunity cost to federal government operations in requiring travel of its staff counsel that warrants consideration. Granted, some courts have held that convenience of attorneys is usually not a proper consideration in a motion to transfer, premising that conclusion upon the observation that § 1404(a) provides that courts may transfer venue "[f]or the convenience of parties and witnesses" and does not explicitly address the convenience of attorneys. 28 U.S.C. § 1404(a) (alteration added); *see, e.g.*, *Cronos Containers, Ltd.* v. *Amazon Lines*, Ltd., 121 F. Supp. 2d 461, 466 n.4. (D. Md. 2000) (noting that it is of no impact that a lead counsel is in Maryland because § 1404(a) is concerned with the convenience of parties and witnesses). However, unlike outside counsel, EEOC counsel are employees of EEOC itself, and the time they spend in travel status directly affects EEOC's ability to carry out other civil enforcement activities. Inconvenience to government counsel is inconvenience to the government itself, as well as the public. Thus, the convenience of EEOC's attorneys is of some consequence under § 1404(a).

Transferring venue to the Western District of Pennsylvania is inappropriate as doing so would merely shift inconvenience from Defendants to EEOC. It is well established that "a transfer

of venue that merely switches the inconvenience from one party to the other generally will be refused." *Pinpoint IT Serv., LLC v. Atlas IT Export Corp.*, 812 F. Supp. 2d 710, 721 (E.D. Va. July 3, 2011); *see also Menk*, 2024 WL 327087, *8 (*citing Byerson v. Equifax Info. Servs., LLC*, 467 F. Supp. 2d 627, 633 (E.D. Va. 2006)) (finding convenience-of-parties factor disfavors transfer where transfer simply shifts inconveniences from one party to another). In support of their claim that the convenience of parties favors transfer, Defendants rely upon their general assertion that the Western District of Pennsylvania is more convenient for their corporate witnesses. Defendants' argument is deficient as "mere assertions of inconvenience or hardship, without more, are insufficient to sustain a motion under Section 1404(a)." *Jones*, 752 F. Supp. 2d at 681; *see also Menk*, 2024 WL 327087, at *8 (noting that defendants cannot satisfy burden by merely citing to inconvenience associated with the commute from headquarters to venue). Further, any inconvenience to Defendants arising from their corporate witnesses' travel to this Court is more than offset by the convenience afforded to EEOC, as maintaining venue in this Court substantially reduces EEOC's cost of obtaining the attendance of its witnesses and considerably increases the amount of time and resources the EEOC may spend on other important civil rights matters.

Finally, the location of Defendants' evidence does not compel transfer because such a consideration is afforded minimal, if any, weight. Even if the majority of Defendants' documents are, in some sense, in the Western District of Pennsylvania, "the location of documents and sources of proof is entitled to little weight" under this factor. *Menk*, 2024 WL 327087, *6 (citation and quotation marks omitted). That is because "with the advent of modern technology, the physical location of proof is less of a barrier to gaining access to proof for litigation." *Id.*

Here, the important documentary evidence in Defendants' possession—such as criminal justice history screening records, job applications, background check reports, employee records,

and payroll data—are already in electronic form (e.g., applicant tracking system files, personnel database files, PDF files, e-mail, and other electronic files) and, once formal discovery commences, will be produced to EEOC via electronic transmission. *See* Exhibit 2, Declaration of Gregory A. Murray ("Exhibit 2") at ¶ 5. Any other records that Defendants currently possess in physical form can easily be digitized for the benefit of both sides, and thus, the location of Defendants' evidence does not compel transfer.

Moreover, many of the relevant records in this case are in the possession of General Information Services (now apparently known as HireRight), Defendants' background check vendor, which maintains its only United States office in Nashville, Tennessee, not western Pennsylvania. *See* HireRight – Our Locations (available at https://www.hireright.com/company/locations). Those records include data files concerning the results of Defendants' criminal history screening and background check reports on Defendants' job applicants, and likely also include communications with Defendants and their job applicants concerning the background check information. These important records are also electronic. *See* Exh. 2 at ¶6.

Defendants merely seek to shift inconvenience to EEOC, and balancing relevant circumstances that Defendants have not discussed in their Motion, the convenience of parties does not clearly favor transfer.  Defendants have not met their burden under Section 1404(a).

## V.    The Interest of Justice Weighs Against Transfer to the Western District of Pennsylvania.

Finally, the interest of justice disfavors transfer because the District of Maryland is the more expeditious venue and Defendants raise no other argument. "In determining whether a transfer is in the interest of justice, courts in this circuit have considered docket congestion, interest in having local controversies decided at home, knowledge of applicable law, unfairness in burdening forum citizens with jury duty, and interest in avoiding unnecessary conflicts of law." *U.S. ex rel.*

*Flanagan v. Fresenius Medical Care Holdings, Inc.*, No. GLR-14-665, 2021 WL 4478704, *6 (D. Md. 2021) (*quoting Jaffe v. LSI Corp.*, 874 F. Supp. 2d 499, 505 (E.D. Va. 2012)) (internal quotation marks omitted). Because the knowledge of applicable law, burden to jurors, and interest in avoiding conflict-of-law considerations are inapplicable to this Title VII action, such considerations are irrelevant in the present analysis. The remaining consideration of local interest does not favor either forum.  And the docket conditions consideration weighs against transfer.

In their Motion, Defendants do not argue that there is any particular local interest favoring transfer.  That is because there is no such interest.  This is a company-wide lawsuit involving facilities and business operations in six (and soon to be seven) states. Aggrieved job applicants are spread throughout those various jurisdictions. There is no particularized local interest in any one jurisdiction.  Indeed, the fact that this is a civil enforcement action by a federal agency involving an employment practice that is infrequently the subject of litigation makes it arguably a matter of national interest. Moreover, as Defendants admit, they maintain at least 35 worksites in Maryland. ECF No. 15-1 ¶ 28; ECF No. 15-2 ¶ 16. That is sufficient to establish a local interest in this forum. *See Menk*, 2024 WL 327087, at *6 (ruling that interest of justice disfavors transfer where several plaintiffs resided in, worked in, or were terminated from employment in Maryland, notwithstanding many employment decisions involving plaintiffs were made in proposed forum state).

Contrary to Defendants' argument, the docket-conditions consideration actually militates *against* transfer because docket statistics indicate that District of Maryland is a more expeditious venue than the Western District of Pennsylvania. The speed at which a case may reach trial is an important issue in a court's consideration of docket conditions in determining whether to retain a case. *See Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1337 (9th Cir.1984 ) ("[T]he real issue is not whether a dismissal will reduce a court's congestion but whether a trial may be speedier in

another court because of its less crowded docket."); *see also Menk*, 2024 WL 327087, *8 (observing that expediency of resolution is weighed in a §1404(a) analysis).

Docket statistics show that the District of Maryland is the more expeditious forum in terms of moving cases to trial and resolving motions pending more than six months. According to the United States Court System's Federal Court Management Statistics Report (December 2023), while the District of Maryland and the Western District of Pennsylvania have the same number of judges and the District of Maryland has more cases per judge, the time from filing a civil action to trial in the Western District of Pennsylvania is 45.4 months whereas, in the District of Maryland, it is only 39.5 months. *See* U.S. District Courts – National Judicial Caseload Profile (available at https://www.uscourts.gov/sites/default/files/fcms_na_distprofile1231.2023_0.pdf). Further, as of September 30, 2023, the total number of motions pending for more than six months in the Western District of Pennsylvania is 80 whereas, in the District of Maryland, it is only 22. *See* U.S. District Courts – Report of Motions Pending Over Six Months as of September 30, 2023 (available at https://www.uscourts.gov/sites/default/files/data_tables/cjra_8_0930.2023.pdf). An expeditious resolution is especially important in this case, which seeks injunctive relief for ongoing civil rights violations. As docket statistics suggest that this Court is the more expeditious venue, maintaining venue in this Court furthers public interest.

Moreover, the District of Maryland has greater capacity to handle this case expeditiously than the Western District of Pennsylvania. In moving to transfer venue, Defendants assert that the Johnstown location of the Western District of Pennsylvania would be convenient for their corporate witnesses. ECF No. 15 at 10–11. However, the Johnstown courthouse of the Western District of Pennsylvania has fewer Article III judges available to accommodate this case while timely adjudicating pending and newly filed criminal and civil matters. Whereas the Northern Division of

the District of Maryland has eight district judges, the Johnstown courthouse of the Western District of Pennsylvania has only two district judges, one of whom has taken senior status.

The difference in docket statistics cited by Defendants to support their argument is slight and so does not favor transfer. In support of their motion, Defendants merely reference purported numbers[10] of pending cases per judge in the two forums and argue that such statistics suggest that the District of Maryland is "slightly more congested" than the Western District of Pennsylvania. ECF No. 15 at 13. However, slight differences in docket statistics are irrelevant here. "There must be a significant statistical difference between districts for transfer to be warranted." *Russell v. Krowne*, No. DKC-08-2468, 2009 WL 10685441, at *8 (D. Md. June 19, 2009) (*citing Triad Int'l Maint. Corp. v. Aim Aviation, Inc*., 473 F. Supp. 2d 666, 671 (M.D.N.C. 2006) (finding 3.6-month difference in median time from filing to disposition to be "marginal" and denying transfer)).

Further, the relevant statistic with respect to caseload per judgeship should be *weighted filings* per judgeship, not pending cases per judgeship. Weighted filings account for the different amounts of time district judges require to resolve various actions, as some cases are by nature more time-consuming than others. *See* U.S. Courts Explanation of Selected Terms (December 2023) (available at https://www.uscourts.gov/sites/default/files/explanation_of_selected_terms_december_2023.pdf). In the 12-month period ending on December 31, 2023, the weighted filings per judgeship in the District of Maryland was 383 filings, whereas that in the Western District of Pennsylvania was 352 filings. *See* U.S. District Courts – National Judicial Caseload Profile 2023 (available at https://www.uscourts.gov/sites/default/files/fcms_na_distprofile1231.2023_0.pdf). A mere difference of about 30 weighted filings per judgeship is slight and disfavors transfer.

---

[10] EEOC notes that it is unable to verify the statistics regarding pending cases per judge that Defendants reference.

## CONCLUSION

For the reasons stated above, Defendants have failed to meet their burden to show that substantial reasons exist that warrant transfer of this action, and Defendants' Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) should therefore be denied.

Respectfully submitted,

*/s/ Ronald L. Phillips*
Ronald L. Phillips, OH Bar No. 0070263
Assistant Regional Attorney
U.S. Equal Employment Opportunity Commission
Baltimore Field Office
31 Hopkins Plaza, Suite 1432
Baltimore, MD 21201
Email: ronald.phillips@eeoc.gov
Phone: (410) 801-6714
Fax: (410) 962-4270

*/s/ Gregory A. Murray*
Gregory A. Murray, PA Bar No. 316144
Senior Trial Attorney
U.S. Equal Employment Opportunity Commission
Pittsburgh Field Office
William S. Moorhead Federal Building
1000 Liberty Avenue, Suite 1112
Pittsburgh, PA 15222
Email: gregory.murray@eeoc.gov
Phone: (412) 588-6907
Fax: (412) 395-5749

*/s/ Jenny Xia*
Jenny Xia, NY Bar No. 5744933
Trial Attorney
U.S. Equal Employment Opportunity Commission
Baltimore Field Office
31 Hopkins Plaza, Suite 1432
Baltimore, Maryland
Email: jenny.xia@eeoc.gov
Phone: (410) 801-6687
Fax: (410) 962-4270

*Counsel for Plaintiff U.S. Equal
Employment Opportunity Commission*

28