## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,**

        *Plaintiff,*

    v.

**SHEETZ, INC.,** *et al.*,

        *Defendants.*

        **Civil No.: 1:24-cv-01123-JRR**

## <u>MEMORANDUM OPINION</u>

This matter comes before the court on Defendants Sheetz, Inc., Sheetz Distribution Services, LLC ("SDS"), and CLI Transport, LP's (collectively Defendants) Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) and Partial Motion to Dismiss for Failure to State a Claim. (ECF Nos. 14, 15, 18, and 19.) The court has reviewed all papers. No hearing is necessary. Local Rule 105.6 (D. Md. 2023).

## I.    <u>BACKGROUND</u>[1]

Plaintiff U.S. Equal Employment Opportunity Commission ("EEOC") brings this action against Defendants alleging a pattern or practice of racially discriminatory hiring practices in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"). (ECF No. 1.) EEOC seeks "to correct unlawful employment practices" and obtain appropriate relief for a class of aggrieved Black, American Indian/Alaska Native, and multiracial job applicants adversely affected by Defendants' hiring practices. *Id.* EEOC alleges that Defendants subjected the designated class to an "ongoing, company-wide employment practice of

---

[1] For purposes of this memorandum, the court accepts as true the well-pled facts set forth in the Complaint. (ECF No. 1.)

refusing to hire such persons because of information about their criminal justice histories, including but not limited to convictions, that resulted in those applicants being denied employment opportunities." *Id.*

EEOC alleges that from at least August 10, 2015, and continuing to the present, Defendants have implemented a policy of screening job applicants based on their criminal history. (ECF No. 1 ¶ 21.) The policy entails gathering job applicants' criminal history information through questions on job application forms and background checks conducted by third-party vendors. *Id.* ¶ 22. Such information is obtained after Defendants extend a conditional offer of employment to applicants. *Id.* "Based on job applicants' criminal justice history, including but not limited to convictions, Defendants make a decision whether job applicants are deemed to have passed or failed the review." *Id.* ¶ 23. "Defendants refuse to hire all job applicants who they deem to have failed their criminal justice history screening." *Id.* ¶ 24.

EEOC further alleges that Defendants' personnel who decide whether job applicants pass or fail the screening "have not been, and are not, required by Defendants to contact the job applicants to request additional information not reflected in the consumer reports before deeming them to have failed the criminal justice history screening." (ECF No. 1 ¶ 25.) Moreover, Defendants do not require a managerial official or other company official beyond the personnel assigned to conduct the criminal history screening to review the decisions to deny employment. *Id.* ¶ 26. Defendants also do not require applicants to receive information regarding decisions to deny employment based on the criminal history screening. *Id.* ¶ 27. In addition, Defendants do not maintain a procedure for applicants denied employment on the basis of the criminal history screening to appeal or seek reconsideration of such decisions. *Id.* ¶ 28.

On April 17, 2024, EEOC filed the Complaint, which sets forth three counts of racial discrimination in hiring practices: Denial of Hiring Because of Race – Black (Count I); Denial of Hiring Because of Race – American Indian/Alaska Native (Count II); and Denial of Hiring Because of Race – Multiracial (Count III). (ECF No. 1 ¶¶ 30–43.) The prayer for relief seeks: (i) a permanent injunction to prohibit Defendants from engaging in racial discrimination in hiring and using the current employment selection process; (ii) an order that Defendants implement policies that provide equal employment opportunities for Black, American Indian/Alaska Native, and Multiracial job applicants; (iii) an order that Defendants make whole a class of aggrieved Black, American Indian/Alaska Native, and Multiracial applicants by providing appropriate back pay with prejudgment interest; (iv) any other relief this court deems necessary and proper; and (v) costs of this action. *Id.* at 12–14.

On June 12, 2024, Defendants filed the Motion to Transfer. (ECF Nos. 14 and 15.) Defendants request that the court transfer this action to the Western District of Pennsylvania (Johnstown Division) pursuant to 28 U.S.C. § 1404(a). On June 14, 2024, Defendants filed the Partial Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), which seeks dismissal of claims arising before May 13, 2017.

## II.    LEGAL STANDARDS

### Motion to Transfer – 28 U.S.C. § 1404(a)

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." "In a motion to transfer venue pursuant to § 1404(a), the moving party bears the burden of showing, by a preponderance of the evidence, that transfer to another venue is proper." *Kimber v. Plus3 IT*

3

*Sys., LLC*, No. CV ELH-18-3046, 2019 WL 1518970, at *3 (D. Md. Apr. 5, 2019).  "The decision whether to transfer is committed to the sound discretion of the trial court." *Mamani v. Bustamante*, 547 F. Supp. 2d 465, 469 (D. Md. 2008).

"Based on the statutory language, the standard for a § 1404(a) transfer can be distilled, as follows: '(1) the transferee court must be a court in which the action could have been brought initially; (2) the transfer must be convenient to the parties and witnesses; and (3) the transfer must be in the interest of justice.'" *Kimber*, 2019 WL 1518970, at *3 (quoting *Dow v. Jones*, 232 F. Supp. 2d 491, 499 (D. Md. 2002)).  "In reviewing a motion to transfer, [the] [c]ourt may consider evidence outside the pleadings." *Siemens Energy, Inc. v. CSX Transp., Inc.*, No. RDB-15-1072, 2016 WL 1059261, at *2 n.2 (D. Md. Mar. 17, 2016); *see also Ancient Sun Nutrition, Inc. v. Oregon Algae, LLC*, No. 1:10cv140, 2010 WL 3719503, at *1 (W.D.N.C. Sept. 17, 2010) ("Unlike a Rule 12(b) motion, which is limited to facts contained in the Complaint, a motion to transfer allows for review of materials submitted outside the pleadings").

## Motion to Dismiss – Federal Rule of Civil Procedure 12(b)(6)

"'The purpose of Rule 12(b)(6) is to test the sufficiency of a complaint' and not to 'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)).  Accordingly, a "Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling [her] to relief." *Edwards*, 178 F.3d at 244 (citing *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)).

4

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "A complaint that provides no more than 'labels and conclusions,' or 'formulaic recitation of the elements of a cause of action,' is insufficient." *Bourgeois v. Live Nation Ent., Inc.*, 3 F. Supp. 3d 423, 434 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555). "The [c]ourt must be able to deduce 'more than the mere possibility of misconduct'; the facts of the complaint, accepted as true, must demonstrate that the plaintiff is entitled to relief." *Evans v. 7520 Surratts Rd. Operations, LLC*, No. PX-21-1637, 2021 U.S. Dist. LEXIS 221041, at *4 (D. Md. Nov. 16, 2021) (quoting *Ruffin v. Lockheed Martin Corp.*, 126 F. Supp. 3d 521, 526 (D. Md. 2015)).

## III.   ANALYSIS

## Motion to Transfer[2]

Defendants argue that, pursuant to 28 U.S.C. § 1404(a), the court should transfer this case to the Western District of Pennsylvania due to the lack of connection between EEOC's claims and Maryland, and for the convenience of the witnesses and parties. (ECF No. 15 at 2.) As stated above, Defendants must first show that the transferee court is a court in which the action could have been brought. Then, Defendants "must show by a preponderance of the evidence that the

---

[2] As stated above, "[i]n reviewing a motion to transfer, [the] [c]ourt may consider evidence outside the pleadings." *Siemens Energy, Inc. v. CSX Transp., Inc.*, No. RDB-15-1072, 2016 WL 1059261, at *2 n.2 (D. Md. Mar. 17, 2016). Defendants attach two exhibits to the Motion to Transfer: Exhibit A – Declaration of Chris Fasick (ECF No. 15-1); and Exhibit B – Declaration of Jeff Eisaman. (ECF No. 15-2.) EEOC attaches two exhibits to the Response in Opposition to the Motion to Transfer: Exhibit 1 – Declaration of Martha Foster (ECF No. 26-1); and Exhibit 2 – Declaration of Gregory A. Murray. (ECF No. 26-2.) For purposes of resolving the Motion to Transfer, the court will consider the exhibits attached to Defendants' Motion to Transfer and EEOC's Response in Opposition. *See Siemens Energy, Inc., supra.*

proposed transfer will better and more conveniently serve the interests of the parties and witnesses and better promote the interests of justice." *Helsel v. Tishman Realty & Constr. Co.*, Inc., 198 F. Supp. 2d 710, 711 (D. Md. 2002) (internal quotation marks and citation omitted).

A.    **Venue**

The preliminary inquiry under 28 U.S.C. § 1404(a) is whether the civil action could have been brought in the transferee district. *D2L Ltd. v. Blackboard, Inc.*, 671 F. Supp. 2d 768, 777 (D. Md. 2009). "To establish that an action could have been brought in the proposed transferee district, the movant must show that the district is a proper venue and that the transferee court would have personal jurisdiction over the defendant." *Id.* at 778.

Relevant here, Title VII includes a specific venue provision, which provides:

> Each United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this subchapter. Such an action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office.

42 U.S.C. § 2000e-5(f)(3).

EEOC does not dispute,[3] and the court is satisfied, that the instant case could have been brought in the United States District Court for the Western District of Pennsylvania and that Defendants are subject to personal jurisdiction in that district. Defendants' alleged acts that form the basis of EEOC's causes of action occurred at Defendants' "facilities and business operations

---

[3] EEOC argues that the special venue provision authorizes venue in the District of Maryland. (ECF No. 26.) For purposes of resolving the Motion to Transfer, however, the court's inquiry is whether the proposed action could have been brought in the Western District of Pennsylvania. *See D2L Ltd., supra.*

company-wide," which includes Pennsylvania (Complaint, ECF No. 1 ¶ 20; Defs.' Mot. to Transfer, Exhibit A, ECF No. 15-1, Chris Fasick Decl. ¶ 26; EEOC's Resp., Exhibit 1, ECF No. 26-1, Martha Foster Decl. ¶¶ 6–7); Defendants' records relevant to the alleged unlawful employment practices are maintained at Defendants' facilities in Blair County, Pennsylvania (Fasick Decl. ¶¶ 19–20, 24; Defs.' Mot. to Transfer, Exhibit A, ECF No. 15-2, Jeff Eisaman Decl. ¶¶ 20–22); the potential aggrieved individuals and the two individuals identified in the Complaint would have worked in Pennsylvania but for the alleged unlawful employment practices (Fasick Decl. ¶¶ 30–31; EEOC's Resp., Exhibit 1, ECF No. 26-1, Martha Foster Decl ¶¶ 6–7); and Defendants are headquartered in Altoona, Pennsylvania, and incorporated in the Commonwealth of Pennsylvania.  (Fasick Decl. ¶¶ 9–11; Eisaman Decl. ¶¶ 8–9.)

Accordingly, the court will proceed to consider the four requisite factors to determine whether transfer is appropriate: (1) EEOC's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interests of justice.

### B.      Transfer Factors

As stated above, "[a] motion to transfer under § 1404(a) 'calls on the district court to weigh in the balance a number of case-specific factors.'"  *Capitol Payment Sys., Inc. v. Di Donato*, No. CV ELH-16-882, 2017 WL 2242678, at *7 (D. Md. May 23, 2017) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).  "These include: '(1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice.'"  *Id.* (quoting *Tr. of the Plumbers and Pipefitters Nat. Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015)).  "Other factors include the 'local interest in having localized controversies settled at home' and the 'appropriateness in having a trial of a

diversity case in a forum that is at home with the state law that must govern the action.'" *Id.* (quoting *Stratagene v. Parsons Behle & Latimer*, 315 F. Supp. 2d 765, 771 (D. Md. 2004)).

Defendants "must show by a preponderance of the evidence that the proposed transfer will better and more conveniently serve the interests of the parties and witnesses and better promote the interests of justice." *Helsel v. Tishman Realty & Constr. Co., Inc.*, 198 F. Supp. 2d 710, 711 (D. Md. 2002) (internal quotation marks and citation omitted). "Mere assertions of inconvenience or hardship, without more, are insufficient to sustain a motion under Section 1404(a)." *Jones v. Koons Auto., Inc.*, 752 F. Supp. 2d 670, 681 (D. Md. 2010). "Therefore, to satisfy its burden the defendant should submit, for example, 'affidavits from witnesses and parties explaining the hardships [it] would suffer if the case were heard in the plaintiff's chosen forum.'" *Id.* (quoting *Dow v. Jones*, 232 F. Supp. 2d 491, 499 (D. Md. 2002)). Ultimately, "[t]he decision whether to transfer is committed to the sound discretion of the trial court." *Mamani v. Bustamante*, 547 F. Supp. 2d 465, 469 (D. Md. 2008).

### 1.    EEOC's Choice of Venue

"As a general rule, a plaintiff's 'choice of venue is entitled to substantial weight in determining whether transfer is appropriate.'" *Tr. of the Plumbers and Pipefitters Nat. Pension Fund*, 791 F.3d at 444 (quoting *Bd. of Trs. v. Sullivant Ave. Props., LLC*, 508 F. Supp. 2d 473, 477 (E.D. Va. 2007)). "Indeed, unless the balance of factors points 'strongly in favor of the defendant, the plaintiffs' choice of forum should rarely be disturbed.'" *Kimber v. Plus3 IT Sys., LLC*, No. CV ELH-18-3046, 2019 WL 1518970, at *4 (D. Md. Apr. 5, 2019) (quoting *Collins v. Straight, Inc.*, 748 F.2d 916, 921 (4th Cir. 1984)). "This is particularly true where 'the chosen forum is the plaintiff's home or bears a substantial relation to the cause of action.'" *Id.* (quoting *comScore, Inc. v. Integral Ad Science, Inc.*, 924 F. Supp. 2d 677, 682 (E.D. Va. 2013)). "However, in cases in

which 'none of the conduct complained of occurred in the forum selected by the plaintiff and said forum has no connection with the matter in controversy,' deference is less appropriate." *Manne v. Jaddou*, No. CV 21-1092-PJM, 2022 WL 102853, at *7 (D. Md. Jan. 11, 2022) (quoting *United States ex rel. Salomon v. Wolff*, 268 F. Supp. 3d 770, 774-75 (D. Md. 2017)). "In particular, when a plaintiff chooses to bring suit in a forum that is not plaintiff's home forum, deference is less likely." *Id.*

Defendants argue that EEOC's choice of forum is entitled to minimal deference for three reasons: (1) EEOC is a federal government agency; (2) EEOC brings claims on behalf of a class of job applicants denied positions by Defendants on a corporate-wide basis; and (3) Maryland is not EEOC's home and Maryland has little or no connection to the facts of this case. (ECF No. 15-2 at 8–9.) The court agrees.

Defendants direct the court's attention to *E.E.O.C. v. FedEx Ground Package Sys., Inc.*, No. CIV.A. WMN-14-3081, 2015 WL 790500 (D. Md. Feb. 24, 2015). There, the EEOC filed suit alleging that FedEx violated the Americans with Disabilities Act (ADA)[4] "by discriminating against and failing to accommodate deaf or hard-of-hearing individuals either employed as Package Handlers or who have applied for Package Handler positions." *Id.* at *1. EEOC brought the action on behalf of 17 named charging parties and an unspecified number of similarly aggrieved individuals. *Id.*

FedEx argued for transfer to the Western District of Pennsylvania pursuant to 28 U.S.C. §1404(a). *Id.* at *1, 3. As to the first factor, the court explained that the weight accorded to a

---

[4] Under the ADA, the applicable venue provision is 42 U.S.C. § 2000e of Title VII. *E.E.O.C. v. United Airlines, Inc.*, No. C 09-2469 PJH, 2009 WL 7323651, at *2 (N.D. Cal. Dec. 3, 2009); *see US Equal Emp. Opportunity Comm'n v. Hirschbach Motor Lines Inc.*, No. 2:18-CV-00175-GZS, 2018 WL 6174434, at *2 (D. Me. Nov. 26, 2018) ("[T]he Court agrees with the parties that the EEOC could have originally filed the case in the Northern District of Iowa under the applicable venue provision of the ADA.") (citing 42 U.S.C. § 12117(a) (incorporating by reference the procedures of 42 U.S.C. § 2000e-5)).

plaintiff's choice of forum is lessened when the plaintiff is a government agency.  *Id.* at *1. "Nevertheless, 'the presumption in favor of the plaintiff is not eliminated; the government's choice of venue is still entitled to some deference.'"  *Id.* (quoting *E.E.O.C. v. Texas Roadhouse, Inc.*, Civ. No. 11–11732, 2012 WL 5894910, at *1 (D. Mass. Nov. 9, 2012)).  Accordingly, the *FedEx* court concluded that the first "factor tips slightly against transfer."  *E.E.O.C. v. FedEx Ground Package Sys., Inc.*  No. CIV.A. WMN-14-3081, 2015 WL 790500, at *1 (D. Md. Feb. 24, 2015).

EEOC's argument that its choice of forum is entitled to substantial weight or even greater weight because of the special venue provision is unavailing.  (ECF No. 26 at 7–8.)  Indeed, the cases on which EEOC relies reveal material factual differences from the instant case.  In *Wellens* and *Turnley*, the plaintiff was not a federal government agency.  *See Wellens v. Daiichi Sankyo Co., Inc.*, No. C 13–00581 CW, 2013 WL 3242294, at *1 (N.D. Cal. June 25, 2013) (noting that the named plaintiffs are all California residents); *Turnley v. Banc of Am. Inv. Servs., Inc.*, 576 F. Supp. 2d 204, 207 (D. Mass. 2008) (explaining that all the plaintiffs are employees or former employees of the defendants).  The various other cases cited did not involve Title VII's special venue provision.  *See United States v. United States Sugar Corp.*, No. CV 21-1644 (MN), 2022 WL 354228, at *3 (D. Del. Jan. 11, 2022) (explaining the venue provision contained in Section 12 of Clayton Act and noting that some courts have found that the United States' choice of forum in antitrust cases should be given heightened preference); *FTC v. Big Dog Solutions LLC*, No. 16-cv-6607, 2016 WL 5391391, *1–2 (N.D. Ill. Sept. 27, 2016) (identifying Federal Trade Commission Act's special venue provision and concluding that the plaintiffs' "choice of forum should be afforded its usual 'substantial' weight in the Section 1404(a) calculus"); *U.S. v. Brown Univ. in the State of R.I. and Providence Plantations*, 772 F. Supp. 241, 242 (E.D. Pa. 1991) (citing Section 12 of the Clayton Act liberal venue requirements and noting "many courts, pointing to the liberal

venue requirements for the government bringing an antitrust suit, have held that in such suits, plaintiffs' choice of forum is entitled to heightened respect"); *In re Laidlaw Sec. Litig.*, No. 91–1289, 1991 WL 170837, *2 (E.D. Pa. Aug. 27, 1991) (explaining Securities and Exchange Act of 1934's special venue provision and noting that the "[p]laintiffs' choice of forum is particularly preferred in federal securities actions").

Here, as a federal government agency, EEOC's choice of forum is entitled to less deference. *See FedEx, supra; Texas Roadhouse, Inc.*, 2012 WL 5894910, at *1 (noting that "[t]he presumption in favor of the EEOC's choice remains, though it is slightly lessened"); *US Equal Emp. Opportunity Comm'n v. Hirschbach Motor Lines Inc.*, No. 2:18-CV-00175-GZS, 2018 WL 6174434, at *1 (D. Me. Nov. 26, 2018) ("Although a plaintiff's choice of forum is entitled to less deference where, as here, the plaintiff is a government agency, the presumption is not eliminated."); *Equal Emp. Opportunity Comm'n v. BNSF Ry. Co.*, No. C14-1488 MJP, 2015 WL 11613289, at *1 (W.D. Wash. Aug. 6, 2015) ("Even if the EEOC's preferences alone were at issue, courts have held that the presumption in favor of [a government] plaintiff is not eliminated; the government's choice of venue is still entitled to some deference.") (citations omitted)); *E.E.O.C. v. United Airlines, Inc.*, No. C 09-2469 PJH, 2009 WL 7323651, at *3 (N.D. Cal. Dec. 3, 2009) ("[B]ecause the EEOC is both a government agency and the plaintiff in a class action, the weight accorded to the EEOC's choice of forum is diminished."); *EEOC v. Icon Benefit Adm'rs, Inc.*, Civ. No. 02–527, 2003 WL 748268, at *5 (W.D. Tex. Feb. 10, 2003) (observing that "the personal interest normally associated with a plaintiff's choice of forum do not weigh as heavily in [the EEOC's] favor in this case as they do when a plaintiff is a corporation or natural person")).[5]

---

[5] EEOC does not distinguish any of the cases cited by Defendants for this proposition.

Defendants further argue that EEOC's choice of venue should not be accorded significant weight because EEOC brings claims on behalf of a class of job applicants and the claims have little or no connection to Maryland. (ECF No. 15 at 8–9.) In response, EEOC contends generally that "both in terms of locus of Defendants and aggrieved persons and the locus of the challenged employment practices, there is a clear connection to the District of Maryland." (ECF No. 26 at 10.) EEOC further asserts that "there is only one plaintiff: EEOC." *Id.* at 9.

Generally, even absent the distinction of EEOC as a federal agency as noted above, the weight afforded a plaintiff's choice of forum is significantly lessened "when the plaintiff selects a forum other than its home forum and the claims bear little or no relation to the chosen forum." *Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d 627, 633 (E.D. Va. 2003); *see Lynch v. Vanderhoef Builders*, 237 F. Supp. 2d 615, 617 (D. Md. 2002) ("Although a plaintiff's choice of forum is ordinarily accorded considerable weight, that weight is significantly lessened when none of the conduct complained of occurred in the forum selected by the plaintiff and said forum has no connection with the matter in controversy."); *Mamani*, 547 F. Supp. 2d at 473 ("[A] court need not accord the choice as much weight when the 'forum has no connection with the matter in controversy.'") (citation omitted). Accordingly, the court considers the degree to which EEOC's claims against Defendants are related to Maryland. *Koh*, 250 F. Supp. 2d at 633; *see Bannister v. Wal-Mart Stores E., L.P.*, 843 F. Supp. 2d 610, 615 (E.D.N.C. 2012) ("[T]he deference given to a plaintiff's choice of forum is proportionate to the relationship between the forum and the cause of action."); *Maiden Biosciences, Inc. v. MPM Med., Inc.*, No. CV RDB-17-3029, 2018 WL 2416071, at *5 (D. Md. May 29, 2018) ("Given that Maryland has relatively slight connection to the Defendants or to the events giving rise to Maiden's claims, the first factor supports transferring this case.").

12

Here, while the connection between Maryland and EEOC's cause of action is not "sufficiently strong," *Gennari Consulting, Inc. v. Wellington Corp., LLC*, No. CV ELH-19-1851, 2019 WL 6829102, at \*8 (D. Md. Dec. 13, 2019), it cannot be said that Maryland has no connection to the facts of the case.  EEOC alleges that Defendants have engaged in unlawful employment practices through the use of "criminal justice history information as the basis for declining to hire job applicants" and that such practices occurred at Defendants' Maryland facilities and all other facilities and business operations company-wide.  (ECF No. 1 ¶ 20.)  Sheetz has over 24,000 employees and 700 store locations across six states – Pennsylvania, Ohio, Maryland, Virginia, West Virginia, and North Carolina.  (Fasick Decl. ¶ 26.)  Although certain events giving rise to the action occurred at Defendants' headquarters in Pennsylvania (Fasick Decl. ¶¶ 8, 19, 21), there are also "over 1,000 names of people who were categorized as having failed Defendants' criminal history screening and who are identified in the data as Black, American Indian/Alaska Native, or multiracial" and their last known residence addresses are across 30 states, including Maryland, and the District of Columbia.  (Foster Decl. ¶¶ 6–7.)

The court, however, also considers that of the six states that are home to Sheetz stores, Maryland has the fewest (34 stores), and no Sheetz employees responsible for administering and revising the policies involving criminal history reviews are located in Maryland.  (Fasick Decl. ¶ 13, 20, 23, 28.)  In addition, the two EEOC charges referenced in the Complaint that prompted the EEOC investigation relate to denial of jobs to applicants located in Pennsylvania, not Maryland.  (Fasick Decl. ¶¶ 30–31; ECF No. 1 ¶¶ 12–13.)  *See Equal Emp. Opportunity Comm'n v. BNSF Ry. Co.*, No. C14-1488 MJP, 2015 WL 11613289, at \*1 (W.D. Wash. Aug. 6, 2015) (explaining that some weight is afforded to the EEOC's choice of forum (Seattle, Washington) where the charging party applied for a position in Seattle, relocated to Washington, and filed his charge with the EEOC

Seattle field office).   Accordingly, the court concludes that Maryland has little connection to EEOC's claims.

In view of the foregoing, the court concludes that EEOC's decision to file suit in Maryland weighs only slightly against transfer.

### 2.   <u>Witness Convenience/Access</u>

The second factor for the court to consider is the convenience of the witnesses.   "The convenience of the witnesses is 'perhaps the most important factor' in determining whether a transfer of venue should be granted." *Mamani v. Bustamante*, 547 F. Supp. 2d 465, 473 (D. Md. 2008) (quoting *Cronos Containers Ltd. v. Amazon Lines, Ltd.*, 121 F. Supp. 2d 461, 466 (D. Md. 2000)); *see* 15 C. WRIGHT & A. MILLER, FED. PRACTICE & PROCEDURE, JURISDICTION AND RELATED MATTERS, § 3851 (4th ed.) ("Wright & Miller") at 253 ("The convenience of witnesses, particularly nonparty witnesses important to the resolution of the case, is often cited as the most significant factor in ruling on a motion to transfer under 28 U.S.C.A. § 1404(a)."). "The party asserting witness inconvenience has the burden to proffer, by affidavit or otherwise, sufficient details respecting the witnesses and their potential testimony to enable the court to assess the materiality of evidence and the degree of inconvenience." *Koh v. Microtek Int'l*, 250 F. Supp. 2d 627, 636 (E.D. Va. 2003). "Put differently, [t]ransfer of venue is inappropriate where it will merely shift the balance of convenience from plaintiff to defendant." *Doe v. Power Sols., LLC*, No. 8:21-CV-02300-PX, 2021 WL 5359667, at *3 (D. Md. Nov. 17, 2021) (citations omitted).

"However, 'the convenience of witnesses who are employees of a party is entitled to less weight because that party can obtain their presence at trial.'" *CV Restoration, LLC v. Diversified Shafts Sols., Inc.*, No. CV ELH-16-2102, 2016 WL 6648750, at *5 (D. Md. Nov. 10, 2016) (citing 15 WRIGHT & MILLER § 3851 p. 278). "The Fourth Circuit has also held that the convenience of

paid expert witnesses carries no weight in the transfer analysis." *Stevens v. Atricure Inc.*, No. 317CV00010MOCDSC, 2021 WL 4785503, at *2 (W.D.N.C. Oct. 12, 2021) (citing *In re Ralston Purina Co.*, 726 F.2d 1002, 1006 n.6 (4th Cir. 1984) ("The convenience of plaintiffs' paid expert witnesses is of little moment.")).

In analyzing the second factor, the court finds guidance from *E.E.O.C. v. FedEx Ground Package Sys., Inc.*, No. CIV.A. WMN-14-3081, 2015 WL 790500 (D. Md. Feb. 24, 2015). Regarding the convenience of witnesses, the *FedEx* court reasoned:

> This Court has held and the parties agree that this factor is perhaps the most important factor. FedEx argues that its employees responsible for developing and implementing the training and orientation provided to Package Handlers—which the EEOC alleges does not sufficiently accommodate deaf or hard-of-hearing individuals—work at FedEx's headquarters in Pittsburgh and live in the area. It also asserts that those responsible for selecting and developing the equipment and technology used by Package Handlers—which the EEOC alleges FedEx has failed to modify or adapt for deaf or hard-of-hearing individuals—also work and live in Pittsburgh. Because the EEOC contends that the discriminatory practices stretch back as far as 2006, FedEx suggests it is likely that some of these individuals may be former employees. Given that they worked in Pittsburgh, FedEx reasons that they are likely to still reside near Pittsburgh.
>
> The EEOC counters that the focus of this case is not on any corporate-wide ADA policy developed (or insufficiently developed) in Pittsburgh, but on the application of the policy, which vests decision-making discretion in front-line personnel. Thus, in the EEOC's view, the key witnesses are the aggrieved individuals themselves and the front-line managers and human resources officials from each FedEx distribution facility. While that may be true, only one of FedEx's distribution facilities is located in Maryland, the rest are disbursed across the country. Therefore, with the exception of those potential witnesses connected with the Hagerstown, Maryland facility, Baltimore is no more convenient than Pittsburgh. Furthermore, as noted above, there is also a distribution center located in Pittsburgh which has been identified by the EEOC as a facility with a significant number of deaf and hard-of-hearing individuals in the Package Handler position.

> From the Court's familiarity with discrimination cases brought, like this one, against large national companies, the inquiry often centers on how an official corporate policy is implemented at the local level. In these cases, what happens at the local level is certainly critical. To determine the liability of the corporation under the anti-discrimination statutes, however, the finder of fact also needs to understand how the official policy is developed, communicated, and monitored. While the understanding of what is happening at the different FedEx distribution centers may come from witnesses dispersed around the country, the understanding of the official policy will come from witnesses who predominately work and live in Pittsburgh.

*Id.* at *3 (citations omitted). Although "the convenience of witnesses who are employees of a party is entitled to less weight because that party can obtain their presence at trial," *CV Restoration, LLC v. Diversified Shafts Sols., Inc.*, No. CV ELH-16-2102, 2016 WL 6648750, at *5 (D. Md. Nov. 10, 2016) (citing 15 WRIGHT & MILLER § 3851 p. 278), the *FedEx* court concluded that FedEx's employees (identified as key witnesses) were the determining factor in granting the motion to transfer. *FedEx*, 2015 WL 790500, at *3.

Defendants contend that their key witnesses are Sheetz, SDS, and CLI employees who live or work in Pennsylvania and they would be inconvenienced if this action proceeds here. (ECF No. 15 at 10–11.) Defendants argue that the location of their "witnesses is critical because this disparate impact case will likely hinge on the actions of the Companies and thus testimony from the Companies' witnesses, not any particular facts pertaining to or testimony from unidentified job applicants denied a position by any of the Companies in Maryland after a criminal history review." *Id.* at 11. Defendants also note that the two individuals whose charges prompted the EEOC investigation applied for jobs in Pennsylvania and no witnesses have been identified who reside in Maryland. *Id.* at 10.

In response, EEOC maintains that "[t]he most important witnesses on liability issues in this action will be the parties' experts and the aggrieved persons who were subject to Defendants'

criminal justice history screening." (ECF No. 26 at 13–14 .)  EEOC argues that the anticipated expert witnesses will reside in various locations across the country and the presently known aggrieved persons reside in all six of the states where Defendants conduct operations, among others. *Id.* at 15–17.  Ultimately, EEOC contends that Baltimore, Maryland is far more accessible and convenient than Johnstown, Pennsylvania. *Id.* at 17–19.

As an initial matter, EEOC argues that Defendants do not articulate with specificity who these witnesses are, the specific issues they will testify about, and why these witnesses would be inconvenienced or face hardship by litigating the case in Maryland.  The court disagrees. Defendants do not merely rely on unattested, general protestations of inconvenience. *Dow v. Jones,* 232 F. Supp. 2d 491, 499 (D. Md. 2002).  Rather, Defendants submitted affidavits by Chris Fasick, Director of Employee Relations & Engagement Programs for Defendants, and Jeff Eisaman, CLI's Director of Transportation.  (ECF Nos. 15-1 and 15-2.)

Like *FedEx,* here, Defendants maintain their key witnesses are employees of Sheetz, SDS, and CLI, who work in Pennsylvania, and they "would have to stay in hotels and wait to testify, while being unable to effectively complete other work or fulfill personal obligations." (ECF No. 15 at 10–11.)  Defendants provide that these witnesses are responsible for developing, revising, and administering Defendants' policies involving criminal history reviews for job applicants. (Fasick Decl. ¶ 8; Eisaman Decl. ¶¶ 20–21.)  Further, all Defendants' policies and procedures, specifically those related to criminal history reviews, "are developed, implemented, and administered by employees working out of [Defendants'] locations in Blair County, Pennsylvania." (Fasick Decl. ¶ 19.)  In fact, the actual review of applicant criminal history information and decision-making process regarding such review also takes place in Pennsylvania, and no employees responsible for developing, implementing, and administering the pre-hire

criminal history review policies or procedures work in Maryland.  (Fasick Decl. ¶¶ 21, 23.)  In sum, "the understanding of the official policy will come from witnesses who predominately work" in Pennsylvania.  *See FedEx, supra.*

      "In many instances, the original forum is convenient for plaintiff's witness, but inconvenient for defendant's witnesses, and the reverse is true for the transferee forum."  *Bd. of Trustees, Sheet Metal Workers Nat. Fund v. Baylor Heating & Air Conditioning, Inc.*, 702 F. Supp. 1253, 1258 (E.D. Va. 1988).  And, in such instances, transfer is inappropriate because the result would merely shift the balance of convenience between the parties.  *Power Sols., LLC*, 2021 WL 5359667, at *3.  Here, however, no specific witnesses are known to live in Maryland apart from potential unidentified aggrieved individuals who worked at Defendants' Maryland facilities.[6]  *See CV Restoration LLC v. Diversified Shafts Sols.*, 2016 WL 6648750, at *6 (finding the second factor weighs against transfer where the plaintiff "identified at least two 'disinterested, non-party witnesses' who live in Maryland," and the defendant "only identified as witnesses persons who are high-ranking corporate officers of [the defendant]").

      EEOC generally refers to potential aggrieved applicants across multiples states and anticipated expert witnesses[7] located across the country.  Therefore, it seems that the anticipated

---

[6] While the court acknowledges Defendants bear the burden, determination of whether Defendants have carried their burden requires the court to evaluate both sides' arguments.  *See Maiden Biosciences, Inc. v. MPM Med., Inc.*, No. CV RDB-17-3029, 2018 WL 2416071, at *5 (D. Md. May 29, 2018) (finding the second and third factors weigh neither for nor against transfer after weighing the parties' arguments); *see also Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d 627, 637 (E.D. Va. 2003) (noting the second factor is difficult to weigh where "'[n]either party [has] provide[d] the requisite particularity about the expected witnesses and their potential testimony to accord this factor much weight'") (quoting *Affinity Memory & Micro v. K & Q Enters.*, 20 F.Supp.2d 948, 955 (E.D. Va. 1998)).

[7] Indeed, "[t]he convenience of expert witnesses . . . is given little weight in the transfer analysis because expert witnesses 'typically are well-compensated for their time and, accordingly, will travel to testify where needed.'"  *Milham v. White*, No. CV 15-3333 ADM/LIB, 2016 WL 3030238, at *3 (D. Minn. May 26, 2016) (quoting *Klatte v. Buckman, Buckman & Reid, Inc.*, 995 F. Supp. 2d 951, 956 (D. Minn. 2014)); *see In re Ralston Purina Co.*, 726 F.2d 1002, 1006 n.6 (4th Cir. 1984) ("The convenience of plaintiffs' paid expert witnesses is of little moment."); *Stevens v. Atricure Inc.*, No. 317CV00010MOCDSC, 2021 WL 4785503, at *2 (W.D.N.C. Oct. 12, 2021) ("The Fourth Circuit has also held that the convenience of paid expert witnesses carries no weight in the transfer analysis."); *Weishaupt v. Bos. Coll.*, No. 1:11-CV-1122, 2012 WL 1439030, at *4 (M.D.N.C. Apr. 24, 2012) ("Yet, the convenience of expert

expert witnesses and potential aggrieved individuals will have to travel, either way.  *See E.E.O.C. v. Icon Ben. Adm'rs, Inc.*, No. EP-02-CA-527-DB, 2003 WL 748268, at *4 (W.D. Tex. Feb. 10, 2003) (". . . the Court is not convinced that traveling to El Paso rather than Lubbock creates a significant difference in convenience. They will have to travel, either way.").  And, as noted above, "[t]he convenience of expert witnesses . . . is given little weight in the transfer analysis because expert witnesses 'typically are well-compensated for their time and, accordingly, will travel to testify where needed.'"  *Milham v. White*, No. CV 15-3333 ADM/LIB, 2016 WL 3030238, at *3 (D. Minn. May 26, 2016) (quoting *Klatte v. Buckman, Buckman & Reid, Inc.*, 995 F. Supp. 2d 951, 956 (D. Minn. 2014)); *see In re Ralston Purina Co.*, 726 F.2d 1002, 1006 n.6 (4th Cir. 1984) ("The convenience of plaintiffs' paid expert witnesses is of little moment."); *Stevens v. Atricure Inc.*, No. 317CV00010MOCDSC, 2021 WL 4785503, at *2 (W.D.N.C. Oct. 12, 2021) ("The Fourth Circuit has also held that the convenience of paid expert witnesses carries no weight in the transfer analysis."); *Weishaupt v. Bos. Coll.*, No. 1:11-CV-1122, 2012 WL 1439030, at *4 (M.D.N.C. Apr. 24, 2012) ("Yet, the convenience of expert witnesses is generally 'of little or no significance on a motion to transfer.'") (quoting 17 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE, § 111.13[1][f][iv] (3d ed. 2012)).  The court also agrees with Defendants that, in light of the fact that Defendants maintain the fewest facilities in Maryland, "most of the purportedly aggrieved parties likely will live outside the District of Maryland and many will be in Pennsylvania, where most of Defendants' facilities are located."  (Fasick Decl. ¶¶ 27–28.)

Accordingly, the court concludes that the second factor tips in favor of transfer.

---

witnesses is generally 'of little or no significance on a motion to transfer.'") (quoting 17 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE, § 111.13[1][f][iv] (3d ed. 2012)).

3.      **Convenience of the Parties**

The third factor for the court to consider is the convenience of the parties.  "A defendant moving for transfer must show both that the original forum is inconvenient for it and that the plaintiff would not be substantially inconvenienced by a transfer."  *CV Restoration, LLC*, 2016 WL 6648750, at *6 (quoting 15 WRIGHT & MILLER § 3849 at 217).  "The convenience of the parties' factor is 'chiefly operative' in cases where a plaintiff has chosen a forum away from either party's home."  *Manne v. Jaddou*, No. CV 21-1092-PJM, 2022 WL 102853, at *8 (D. Md. Jan. 11, 2022).  "[T]he party convenience factor includes assessment of the ease of access to sources of proof, the cost of obtaining the attendance of witnesses, and the availability of compulsory process."  *Samsung Elecs. Co. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 717 (E.D. Va. 2005).

Defendants argue (supported by affidavit) that their headquarters and administrative operations are located in Pennsylvania, their key witnesses are based in Pennsylvania, and most of the document and evidence relevant to the EEOC's claims is located in Pennsylvania.  (ECF No. 15 at 12.)  Defendants further argue that EEOC would not suffer inconvenience because EEOC's Pittsburgh office conducted the underlying charge investigations and one counsel of record for the EEOC is located in Pittsburgh.  *Id.* at 12–13.  In response, EEOC argues that the cost of obtaining the attendance of key witnesses is substantially greater if this action is transferred to Pennsylvania, and there is a greater availability of convenient office space for the litigation teams and witnesses in Maryland as opposed to Pennsylvania.  (ECF No. 26 at 20–21.)  EEOC also asserts that the convenience of EEOC in having its counsel of record avoid unnecessary travel should be considered.  *Id.* at 22.

Here, it is plainly more convenient for Defendants to have this case proceed in Pennsylvania where their headquarters are located.  (Fasick Decl. ¶¶ 11, 14; Eisamin Decl. ¶ 8.)

20

Defendants' corporate offices, department of human resources, employee relations, operations, and the employees involved in the criminal history review are located in Blair County, Pennsylvania. (Fasick Decl. ¶¶ 8, 10, 13, 20–21.) *See FedEx*, 2015 WL 790500, at *2 (explaining that it is more convenient for FedEx to have the case proceed where its headquarters, employees, and directors are located as well as relevant document). The individuals identified in the Complaint that prompted the EEOC investigation applied for positions in Pennsylvania, and EEOC's Pittsburgh Area Office conducted the underlying charge investigation. (ECF No. 15 at 13; Fasick Decl. ¶¶ 30–31.) *See FedEx*, 2015 WL 790500, at *2 (D. Md. Feb. 24, 2015) (considering the locations of the charging parties and the EEOC office that conducted the underlying investigation).[8] While not entitled to significant weight, the court also considers that "many of the documents and materials related to hiring and criminal history reviews are kept at" Defendants' facilities in Pennsylvania. (Fasick Decl. ¶ 24.) *See Pauli v. Ollie's Bargain Outlet, Inc.*, No. 5:22-CV-00279 (MAD/ML), 2022 WL 14760084, at *5 (N.D.N.Y. Oct. 25, 2022) (noting that "with the advent of modern technology, the physical location of proof is less of a barrier to gaining access to proof for litigation").

EEOC's contention that travel to Pennsylvania "is likely to be much more time consuming and therefore expensive" for experts and aggrieved applicants across various states is unavailing. (ECF No. 26 at 21.) And much of EEOC's argument "actually centers more on the convenience of its attorneys, which is not a proper consideration under § 1404(a)." *FedEx*, 2015 WL 790500, at *2 (citing *Cronos Containers, Ltd. v. Amazon Lines, Ltd.*, 121 F. Supp. 2d 461, 466 n.4 ("Section 1404(a) is concerned with the convenience of parties and witnesses and not with the convenience

---

[8] The court notes that, the *FedEx* court concluded that the third factor tipped slightly in favor of transfer even where the EEOC Baltimore office conducted the underlying charge investigation and one of the charging parties was employed at a FedEx facility in Maryland. *FedEx*, 2015 WL 790500, at *2. The opposite is true here.

of counsel.") (D. Md. 2000); *see Manne v. Jaddou*, No. CV 21-1092-PJM, 2022 WL 102853, at

*8 (D. Md. Jan. 11, 2022) (noting that "the location of counsel is not really a factor that even enters

into the equation . . . ."); *Armanno v. Puricle Inc.*, No. CV WDQ-05-2904, 2006 WL 8456736, at

*3 (D. Md. June 1, 2006) (explaining that "[t]he location of counsel, however, is not a factor to be

assessed in determining whether to transfer a case under § 1404(a) . . . ."). Even considering the

convenience of EEOC's attorneys, however, the court notes that one counsel of record works out

of EEOC's Pittsburgh office. Further, Debra Lawerence, Lead Attorney, is the Regional Attorney

for the Philadelphia and Pittsburgh EEOC offices. In sum, the court is not persuaded that EEOC's

attorneys will be unduly inconvenienced by having to litigate the case in Pennsylvania. *See*

*E.E.O.C. v. United Airlines, Inc.*, No. C 09-2469 PJH, 2009 WL 7323651, at *3 (N.D. Cal. Dec.

3, 2009) ("On the other hand, it does not appear that the EEOC will be greatly inconvenienced if

forced to litigate in Illinois. It has an office in Chicago and could therefore carry out its

investigation and litigation preparation from that office.").

Accordingly, for these reasons, the court concludes that the third factor weighs in favor of

transfer.

### 4.    Interest of Justice

The final factor is the interest of justice. "This factor is 'amorphous and somewhat

subjective,' and allows a court to 'consider many things.'" *Kimber v. Plus3 IT Sys., LLC*, No. CV

ELH-18-3046, 2019 WL 1518970, at *6 (D. Md. Apr. 5, 2019). "In assessing whether transfer

would meet the interest of justice, additional factors that the courts consider are the pendency of a

related action, the court's familiarity with the applicable law, docket conditions, and the ability to

join other parties." *Id.* at *6. It "encompasses public interest factors aimed at 'systemic integrity

and fairness.'" *Samsung Elecs. Co. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 721 (E.D. Va. 2005).

"Most prominent among the elements of systemic integrity are judicial economy and the avoidance of inconsistent judgment." *Byerson v. Equifax Info. Servs., LLC*, 467 F. Supp. 2d 627, 635 (E.D. Va. 2006). "In some cases, 'the interest of justice may be decisive in ruling a transfer motion, even though the convenience of the parties and witnesses point in a different direction.'" *Id.* at 637 (quoting *Samsung*, 386 F. Supp. 2d at 716).

Defendants rely on the docket congestion to support transfer. (ECF No. 15 at 13.) "Although this Court has considered relative court congestion in determining whether a case should be transferred, *Gomez v. Kroll Factual Data, Inc.*, Civ. No. 12–2773, 2013 WL 639042, at *5 (D. Md. Mar. 12, 2013), it is certainly not a significant factor." *See FedEx Ground Package Sys., Inc.*, 2015 WL 790500, at *2. In the instant case, the court is not persuaded that docket congestion favors transfer here. The median time from filing to trial is 41.3 months in the Western District of Pennsylvania and 40.8 months in the District of Maryland. *See* United States District Courts – National Judicial Caseload Profile, https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2024.pdf (last accessed October 2, 2024). The median time from filing to disposition is 8.5 months in the District of Maryland and 6.2 months in the Western District of Pennsylvania. *Id.* In addition, in the District of Maryland, there are 491 pending cases per judge and in the Western District of Pennsylvania, there are 407 pending cases per judge. *Id.* Accordingly, the court concludes that docket congestion is not significantly different between the two courts, and, therefore, this factor remains neutral.

## IV.    **CONCLUSION**

Defendants have met their burden to persuade the court by a preponderance of the evidence that transfer is appropriate. The court concludes that transfer would "better and more conveniently serve the interests of the parties and witnesses and better promote the interests of justice." *Jones*

*v. Koons Auto.*, 752 F. Supp. 2d 670, 680–81 (D. Md. 2010).  The Motion to Transfer will be granted.  Therefore, the court will not address the Motion to Dismiss.

For the reasons set forth herein, by separate order, Defendants' Motion to Transfer (ECF No. 14) will be granted.

/S/
_____
Julie R. Rubin
United States District Judge

October 4, 2024