# Exhibit B

# Phath v. Cent. Transp. LLC

United States Court of Appeals for the Third Circuit

October 29, 2025, Argued; January 28, 2026, Decided

No. 25-1028

**Reporter**
2026 U.S. App. LEXIS 2161 *; 2026 LX 52824; __ F.4th __; 2026 WL 219842

RODNEY PHATH, Appellant v. CENTRAL TRANSPORT LLC

**Prior History:** [*1] Appeal from the U.S. District Court, E.D. Pa. Judge John R. Padova, No. 2:24-cv-00681.

**Counsel:** For Appellant: Yasmeen Rose, Grace Seifert, Brian S. Wolfman [Argued], GEORGETOWN UNIVERSITY LAW CENTER APPELLATE COURTS IMMERSION CLINIC, Larry A. Weisberg, WEISBERG CUMMINGS.

For Appellee: Jonathan R. Cavalier [Argued], Morgan Hollander [Argued], JACKSON LEWIS.

For Amicus: Christopher M. McNerney, Outten & Golden.

**Judges:** Before: BIBAS, SCIRICA, and SMITH, Circuit Judges.

**Opinion by:** BIBAS

## Opinion

Opinion of the Court

BIBAS, *Circuit Judge*. Job hunting is never easy; having a criminal conviction makes it much harder. So Pennsylvania law limits when and how employers may use an applicant's criminal history. When Rodney Phath interviewed for a trucking job, he revealed an old robbery conviction, so the trucking company rejected him out of hand. Even though the company learned of the conviction from him, not from a state agency's files, the law still applies. We will thus REVERSE the District Court's dismissal and let his case go forward.

### I. PHATH REVEALS HIS ROBBERY CONVICTION AND IS TURNED DOWN FOR A JOB

Phath applied to drive for Central Transport, a trucking company. He looked like a good candidate: He had a commercial driver's license, [*2] relevant experience, and federal clearance to access secure ports. So he got an interview.

During the hiring process, Central Transport said it would check Phath's criminal record. Before it did that, he told Central Transport what it would find: a fifteen-year-old armedrobbery conviction, for which he had spent six years in prison. Central Transport immediately responded that it would not hire him because of that.

Phath sued Central Transport for violating a Pennsylvania state law that limits employers' use of applicants' criminal histories. The District Court dismissed, holding that the law did not apply because Central Transport had learned of his conviction from Phath, not from the state.

The District Court had jurisdiction under 28 U.S.C. § 1332 because Phath and Central Transport are citizens of different states; we have jurisdiction under § 1291. We review de novo, taking the facts alleged as true. *McCafferty v. Newsweek Media Grp.*, 955 F.3d 352, 356 (3d Cir. 2020).

### II. PENNSYLVANIA'S ACT COVERS JOB APPLICANTS' OWN DISCLOSURES

Pennsylvania's Criminal History Record Information Act limits disclosure and use of "criminal history record information." 18 Pa. Cons. Stat. §§ 9101-9183. That is defined as "[i]nformation collected by criminal justice agencies" about a person's description, arrests, indictments, [*3] convictions, and the like. § 9102. Prospective employers may ask state agencies for that information. *See* §§ 9113(e), 9121(b), 9125.

The question is whether the Act covers Phath's own disclosure. When "an employer is *in receipt of information which is part of an employment applicant's criminal history record information file*, the employer may use the applicant's prior convictions for the purpose of deciding whether or not to hire the applicant ...." §

9125(a) (emphasis added). But employers may use those convictions "only to the extent to which they relate to the applicant's suitability" for the particular job. § 9125(b). And if an employer rejects an applicant because of his criminal history record information, it must give the applicant written notice of its decision. § 9125(c).

Phath alleged violations of subsections (b) and (c). But the dispute here is over subsection (a). Central Transport has not yet tried to show that Phath's conviction makes him unsuitable to drive their trucks. Nor has it tried to show that it notified him of the rejection in writing. Rather, Central Transport argues that the Act does not apply at all because it got the information from Phath, not from a state agency's files. That argument fails.

## A. Section 9125 applies to Phath's disclosure of his own conviction [*4]

This case is about whether the italicized phrase above covers Phath's self-disclosure. It does. Start with "in receipt of." By itself, those words are broad: The employer just has to receive the information. "In receipt of" does not limit how or from whom the employer must receive it.

So what information must the employer be "in receipt of"? "[I]nformation which is part of an employment applicant's criminal history record information file ...." § 9125(a). On its own, "information" is broad too. Next, the word "which" could in theory suggest that the phrase that follows does not define or restrict the type of "information" covered. *See Chicago Manual of Style* ¶ 5.254, at 367 (18th ed. 2024). But that would make the rest of the phrase surplusage, letting the subsection apply to all information of any sort, which makes no sense. And drafters often use "which" loosely to mean "that," introducing a definition or restriction. Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 142-43 (2012). Plus, there is no comma before "which," suggesting that the rest of the phrase restricts the kind of information covered. *Chicago Manual of Style* ¶ 5.254, at 367. The better reading [*5] is that § 9125(a) applies when and only when "information ... is part of an employment applicant's criminal history record information file."

But what is that file, and what is part of it? The statute does not define "file" or "criminal history record information file." That phrase appears only one other time in the Act, instructing repositories to "enter as a permanent part of an individual's criminal history record information file, a listing of all persons and agencies to whom they have disseminated that particular criminal history record information." § 9121(f). That context implies that a "criminal history record information file" is a compilation of criminal history facts collected and maintained by state agencies. *See also* §§ 9102 (defining "repository" in terms of a "criminal justice agency"), 9111 (directing such agencies to maintain such information).

Felony convictions like Phath's are included in that file. §§ 9102, 9111, 9113. So they are "part of" the file. And Central Transport was "in receipt of" that information when Phath disclosed it. Nothing in either phrase requires the information to come from a state agency's file, as opposed to from Phath. Central Transport (like the precedents it cites) reads the statute [*6] as if it applies only when an employer is "in receipt of ~~information which is~~ a part of an employment applicant's criminal history record information file." At oral argument, it admitted as much. But we cannot read the struck-through words out of the statute. What matters in § 9125(a) is the type of information that the employer received, not its source. Thus, when Phath disclosed his conviction, Central Transport was "in receipt of information" that is "part of" his "criminal history record information file."

Resisting this conclusion, at argument Central Transport claimed that our reading would make ban-the-box laws pointless. Not so. Nothing in the Act forbids asking applicants about their convictions; it just limits how employers may use that information. Cities may go further, passing ban-the-box laws to bar even asking about convictions.

## B. Section 9104 does not save Central Transport

Despite all this, Central Transport contends that § 9104 requires inquiry into the information's source. Section 9104(a) creates exceptions for certain sources of information, like court documents, wanted posters, and "police blotters and press releases that contain criminal history record information." But we do not reach how, if at all, [*7] § 9104(a) applies to hiring-discrimination claims because Central Transport learned of Phath's conviction from Phath. And Phath learned of it by living through it, not from any of the excluded sources. Even if

§ 9104(a) applies to § 9125(a), an applicant's own disclosure is not listed as one of the exempted sources. So the *expressio unius* canon applies: By listing only these specific exemptions, the "statute implies the exclusion of" any other exemptions. *Thompson v. Thompson*, 223 A.3d 1272, 1277 (Pa. 2020). Even if § 9104 could shield an employer whose information traced back to one of these sources, it would not shield Central Transport. We cannot create an exemption from § 9125(a) when the legislature failed to do so.

* * * *

Central Transport received information about Phath's robbery conviction, and that information is part of his criminal history record information file. Nothing in the statute requires the information to come *from* the file. Because Pennsylvania's Criminal History Record Information Act forbade using that information to reject Phath without satisfying § 9125's strictures, we will REVERSE and REMAND.

JUDGMENT

This cause came to be considered on the record from the United States District Court for the Eastern District of Pennsylvania and was argued on October 29, **[*8]** 2025.

On consideration whereof, it is now **ORDERED** and **ADJUDGED** that the judgment of the District Court entered on December 23, 2024, is hereby **REVERSED** and **REMANDED**. Costs will be taxed against Appellee. All of the above in accordance with the Opinion of this Court.

**End of Document**